**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Trenton Division)**

| | |
|---|---|
| M. COHEN AND SONS, INC.<br> a Pennsylvania Corporation<br><br>              Plaintiff,<br>    vs.<br><br>PLATTE RIVER INSURANCE COMPANY<br>a Wisconsin Company<br><br>              Defendant. | Civil Action No. 3:20-cv-02149 |

## COMPLAINT

Plaintiff, M. Cohen and Sons, Inc. ("Plaintiff"), by and through its counsel, Fox Rothschild LLP, files this Complaint against Defendant, Platte River Insurance Company ("Defendant") and, in support thereof, avers as follows:

### The Parties

1.      Plaintiff is a corporation, organized and existing under the laws of Pennsylvania, with a business address of 400 Reed Road, Broomall, Pennsylvania, 19008-4001.

2.      Upon information and belief, Defendant is a company, organized and existing under the laws of Wisconsin with a business address of P.O. Box 5900, Madison, Wisconsin, 53705.

### Jurisdiction And Venue

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship because the parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendant occurred in the District of New Jersey.

5. Moreover, pursuant to Section 11 of the Performance Bond described below: "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located…" A true and correct copy of the Performance Bond is attached hereto and incorporated herein as Exhibit A.

6. The work under the Performance Bond took place in part in Trenton, New Jersey.

**<u>Background</u>**

**A. The Agreement Between Plaintiff And W.S. Cumby, Inc. For The Work On The Project.**

7. On or about March 23, 2018, Plaintiff and W.S. Cumby, Inc. ("Cumby") entered into a written agreement (the "Agreement"), whereby, *inter alia,* Plaintiff agreed to perform certain services for Cumby and Cumby agreed to pay Plaintiff for such services.

8. The Agreement required Plaintiff to perform the work at the Institute for Advanced Studies, Rubenstein Commons, 50 Maxwell Lane, Princeton, New Jersey (the "Project").

9. At all times material, Plaintiff performed its obligations under the Agreement.

10. Pursuant to the Agreement, Cumby was required to, among other things: (a) timely approve submittals; (b) timely respond to requests for information ("RFIs"); (c) timely approve and pay change orders; (d) maintain timely project schedules; and (e) provide a design that was free of defects.

11. Cumby failed to meet its contractual obligations.

108029182.v1

12.     Among other things, Cumby (a) failed to approve submittals timely; (b) failed to timely respond to RFIs; (c) failed to approve and to pay change orders timely; (d) failed to maintain project schedules; and (e) failed to provide a design free of defects.

13.     Cumby's failures to meet its contractual obligations prevented MCS from timely performing its obligations under the Agreement.

14.     Among other things, Cumby's failure to meet its contractual obligations prevented MCS from performing a field survey that was a prerequisite to updating shop drawings.

15.     The completion of the field survey served as a critical path milestone for procurement and production of certain glass for the Project.

16.     At all times relevant, Plaintiff informed Defendant of Cumby's breaches.

17.     Because of Cumby's breaches, Plaintiff commenced litigation against Cumby in the Court of Common Pleas, Delaware County, Pennsylvania, Docket No. 2019-0009455 (the "PA Litigation").

18.     At all times relevant, Plaintiff informed Defendant of the PA Litigation and its status.

**B.      The Performance Bond Among Plaintiff, Defendant And Cumby.**

19.     In furtherance of its obligations under the Agreement, on October 26, 2018, Plaintiff, Cumby, and Defendant entered into a Performance Bond whereby Plaintiff and Defendant bound themselves to Cumby for the performance of the Agreement.  See Exhibit A.

20.     Defendant understood that Plaintiff was an intended beneficiary pursuant to the Performance Bond and has rights under the Performance Bond.

21.     Pursuant to the Performance Bond, Defendant's obligation to act arises only when Cumby is not in default.  See Exhibit A, §§ 2 and 3.

108029182.v1

22.     As set forth in the PA Litigation, Cumby is in default under the Agreement.

23.     As such, Defendant has no obligation to act under the Performance Bond.

24.     Even if Cumby was not in default under the Agreement, Defendant's obligation to act under the Performance Bond arises only after Cumby meets the provisions of §3.1, 3.2 and 3.3 of the Performance Bond.

25.     Specifically, §3.3 requires that Cumby agree to pay the Balance of the Contract Price in accordance with the Agreement.

26.     Upon information and belief, Cumby has not agreed to pay the Balance of the Contract Price.

27.     It is only after Cumby has satisfied the requirements of §3, that Defendant has an obligation to promptly take one of the actions enumerated in §5.1 through §5.4.

28.     Specifically, §5.1 through §5.3, require Defendant to promptly (a) arrange for a Contractor, with the consent of Cumby, to perform and complete the Agreement; (b) undertake to perform and complete the Agreement; or (c) obtain bids from qualified contractors acceptable to Cumby to complete the Agreement and to pay Cumby damages.

29.     Pursuant to §5.4, Defendant may also waive its right to perform and complete, arrange for the completion, or obtain a new contractor, (a) after investigation, determine the amount for which it may be liable to Cumby, and as soon as practical, make payment to Cumby; or (b) deny liability in whole or in part and notify Cumby, citing the reasons for the denial.

### C.     Plaintiff Attempted To Confirm The Status Of The Performance Bond With Defendant But Defendant Refused To Respond.

30.     Since October 29, 2019, Plaintiff has told Defendant it is not in default.

31.     On February 12, 2020, Plaintiff's counsel wrote to Defendant's counsel to confirm the status of Cumby's performance under Performance Bond.  A true and correct copy

108029182.v1

of the February 12, 2020, correspondence is attached hereto and incorporated herein as Exhibit B.

32.    Specifically, Plaintiff requested evidence from Defendant that Cumby satisfied §3.3 of the Performance Bond.  See Exhibit B.

33.    In addition, Plaintiff requested that if Defendant refused to deny liability, then it should explain its reasoning to Plaintiff.  See Exhibit B.

34.    Defendant did not respond to Plaintiff's requests.

**D.    Defendant's Interference with Plaintiff's Contract With Walter P. Moore.**

35.    Plaintiff had a subcontract on the Project with Walter P. Moore ("WPM").

36.    Upon information and belief, at the direction of Defendant, Cumby contacted WPM requesting documents created by Plaintiff and/or WPM related to the Project.

37.    In addition, upon information and belief, at the direction of Defendant, Cumby invited WPM to attend a meeting at the Project scheduled for February 27, 2020.

38.    Plaintiff did not consent to Defendant and/or Cumby contacting WPM, requesting documents from WPM, and/or inviting WPM to attend a meeting.

## COUNT I
## Breach Of The Performance Bond

39.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth more fully herein.

40.    Defendant has undertaken to perform under the Performance Bond even though Cumby is in default.

41.    Alternatively, even if Cumby is not in default, Defendant has undertaken to perform under the Performance Bond even though Cumby has not agreed to pay the Balance of the Contract Price in accordance with the Agreement.

42.    Defendant has failed to waive its right to perform and complete, arrange for the completion, or obtain a new contractor by denying liability in whole or in part as requested by Plaintiff.

43.    Because of Defendant's breaches as described herein, Plaintiff has suffered damages and will continue to suffer damages.

44.    Defendant is liable to Plaintiff for the damages referred to in the preceding paragraph.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff relief in an amount in excess of $75,000, together with interest, costs, attorneys' fees and such other as the Court deems appropriate.

## COUNT II
### Breach Of  Implied Covenant Of Good Faith And Fair Dealing

45.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth more fully herein.

46.    The Performance Bond contains an implied covenant of good faith and fair dealing.

47.    As such, Defendant shall not do anything that will have the effect of destroying or injuring the right of Plaintiff to receive the benefits of the Performance Bond.

48.    Plaintiff benefits under the Performance Bond because Defendant's obligation arises only if Cumby has not defaulted.

49.    Despite Plaintiff telling Defendant that Cumby is in default and filing the PA Litigation, Defendant appears to be undertaking steps to benefit Cumby, not Plaintiff, under the Performance Bond.

108029182.v1

50.     Plaintiff benefits under the Performance Bond because Defendant's obligation arises only if Cumby agrees to pay the Balance of the Contract Price.

51.     Upon information and belief, Cumby has not agreed to pay the Balance of the Contract Price and Defendant refuses to confirm this belief.

52.     Plaintiff benefits under the Performance Bond because Defendant has the right to waive performance and to deny liability in whole or in part.

53.     Defendant has not waived its right to perform and has not denied liability despite Plaintiff's request that it do so.

54.     Defendant has not informed Plaintiff that Plaintiff has breached the Agreement in any way.

55.     When Plaintiff executed the Performance Bond, it expected Defendant would not undertake any obligations the Performance Bond did not require it to undertake.

56.     Defendant is undertaking obligations that the Performance Bond does not require it to undertake.

57.     When Plaintiff executed the Performance Bond, it expected Defendant to assert all defenses available to Plaintiff under the Performance Bond.

58.     Defendant has not asserted all defenses available to Plaintiff under the Performance Bond.

59.     Defendant's actions, or inactions as they may be, frustrate the purpose of the Performance Bond.

60.     Defendant's actions, or inactions as they may be, violate the implied covenant of good faith and fair dealing contained in the Performance Bond.

108029182.v1

61.     Because of Defendant's failure to fulfill its implied covenant of good faith and faith dealing as described herein, Plaintiff has suffered damages and will continue to suffer damages.

62.     Defendant is liable to Plaintiff for the damages referred to in the preceding paragraph.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff relief in an amount in excess of $75,000, together with interest, costs, attorneys' fees and such other as the Court deems appropriate.

## COUNT III
## Declaratory Judgment

63.     Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth more fully herein.

64.     Pursuant to the Declaratory Judgments Act, N.J.S.A. 2A:16-52, the Court may declare the rights, status, or legal relations of interested parties to a contract when a controversy exists between the parties regarding the contract.

65.     Here, as set forth above, an actual controversy exists among the parties as to whether (1) the Defendant has any obligations under the Performance Bond because Cumby is in default; (2) the Defendant has any obligations under the Performance Bond if Cumby does not agree to pay the Balance of the Contract Price in accordance with the Agreement; and (3) the Defendant is obligated to waive performance under the Performance Bond and to deny liability

66.     Declaratory relief will resolve the controversy.

67.     The Court should issue declaratory relief because the parties have an immediate need to know whether (1) the Defendant has any obligations under the Performance Bond because Cumby is in default; (2) the Defendant has any obligations under the Performance Bond

108029182.v1

if Cumby does not agree to pay the Balance of the Contract Price in accordance with the Agreement; and (3) the Defendant is obligated to waive performance under the Performance Bond and to deny liability

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff relief in the form of a declaration that (1) the Defendant has no obligations under the Performance Bond because Cumby is in default; (2) the Defendant has no obligations under the Performance Bond unless and until Cumby agrees to pay the Balance of the Contract Price in accordance with the Agreement; and (3) the Defendant is obligated to waive performance under the Performance Bond and to deny liability, together with interest, costs, attorneys' fees and such other as the Court deems appropriate.

## COUNT IV
### Tortious Interference With Contractual Relations

68.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth more fully herein.

69.    Plaintiff maintains a business and contractual relationship with WPM.

70.    Defendant has interfered with Plaintiff's business and contractual relationship with WPM, without justification, by (a) contacting WPM directly; (b) requesting documents from WPM; and (c) inviting WPM to a meeting at the Project.

71.    Defendant took these actions without privilege to do so, knowing the affect the actions would have on Plaintiff's existing business and contractual relationship with WPM.

72.    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered, and continues to suffer, damages, including but not limited to, contractual damages, consequential damages, and incidental increased project costs, and lost profits.

108029182.v1

WHEREFORE, Plaintiff, M. Cohen and Sons, Inc., respectfully requests that the Court grant MCS relief in an amount in excess of $75,000, together with interest, costs, attorneys' fees, punitive damages, and such other as the Court deems appropriate.

**FOX ROTHSCHILD LLP**

Dated: <u>February 27, 2020</u>   By: <u>  */s/ Stephanie Nolan Deviney*  </u>
Stephanie Nolan Deviney, Esquire
NJ Attorney ID No. 015291997
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Phone (609) 896-3600; Fax (609) 896-1469
*Attorneys for Plaintiff*

108029182.v1

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

**FOX ROTHSCHILD LLP**

Dated: February 27, 2020          By:    */s/ Stephanie Nolan Deviney*
                                  Stephanie Nolan Deviney, Esquire
                                  NJ Attorney ID No. 015291997
                                  Princeton Pike Corporate Center
                                  997 Lenox Drive, Building 3
                                  Lawrenceville, NJ 08648-2311
                                  Phone (609) 896-3600; Fax (609) 896-1469
                                  *Attorneys for Plaintiff*

108029182.v1

# EXHIBIT A

Bond No.   S2703038

# Document A312™ – 2010

### Conforms with The American Institute of Architects AIA Document 312

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

M Cohen and Sons, Inc.
400 Reed Road
Broomall, PA 19008-4001

**OWNER:**
*(Name, legal status and address)*

W.S. Cumby, Inc.
938 Lincoln Avenue
Springfield, PA 19064

**SURETY:**
*(Name, legal status and principal place of business)*

Platte River Insurance Company
PO Box 5900
Madison, WI 53705
**Mailing Address for Notices**

This document has important legal
consequences. Consultation with
an attorney is encouraged with
respect to its completion or
modification.

Any singular reference to
Contractor, Surety, Owner or
other party shall be considered
plural where applicable.

**CONSTRUCTION CONTRACT**
Date:      June 20, 2018

Amount: $ 3,508,849.00        Three Million Five Hundred Eight Thousand Eight Hundred Forty Nine Dollars and 00/100

Description:
*(Name and location)*
Project No: 1611 IAS - Rubenstein Commons, 50 Maxwell Lane, Princeton, NJ 08540

**BOND**
Date:      October 26, 2018
*(Not earlier than Construction Contract Date)*

Amount: $ 3,508,849.00        Three Million Five Hundred Eight Thousand Eight Hundred Forty Nine Dollars and 00/100

Modifications to this Bond:    ☐ None    ☒ See Section 16

| CONTRACTOR AS PRINCIPAL | SURETY |
|---|---|
| Company:                    *(Corporate Seal)* | Company:                                        *(Corporate Seal)* |
| M Cohen and Sons, Inc. | Platte River Insurance Company |

Signature: _____     Signature: *Gail M. Perrin*
Name                                            Name        Gail M. Perrin
and Title:                                       and Title:  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**

USI Insurance Services, LLC.
711 East Main St., Ste. 201
Chicopee, MA 01020

855-874-0123

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

  .1   the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

  .2   the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

  .3   the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

  .1   After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

  .2   Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**§ 7** If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

.1     the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

.2     additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

.3     liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**§ 8** If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

**§ 9** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

**§ 10** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**§ 11** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**§ 12** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

**§ 13** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

**§ 14.1 Balance of the Contract Price.** The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

**§ 14.2 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

**§ 14.3 Contractor Default.** Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

**§ 14.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 14.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 15** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

In this document, substitute "Subcontractor" for "Contractor" and substitute "Contractor" for "Owner".

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                              **SURETY**

Company:                      *(Corporate Seal)*        Company:                      *(Corporate Seal)*

Signature: _____                       Signature: _____
Name and Title:                                         Name and Title:
Address                                                 Address

## PLATTE RIVER INSURANCE COMPANY
## POWER OF ATTORNEY

S2703038
Bond Number

KNOW ALL MEN BY THESE PRESENTS, That the **PLATTE RIVER INSURANCE COMPANY**, a corporation of the State of Nebraska, having its principal offices in the City of Middleton, Wisconsin, does make, constitute and appoint

**Gail M. Perrin**
Name of licensed Individual

its true and lawful Attorney(s)-in-fact, to make, execute, seal and deliver for and on its behalf, as surety, and as its act and deed, any and all bonds, undertakings and contracts of suretyship, provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount the sum of $ __See Bond Form__ for __S2703038__ on behalf of __M Cohen and Sons, Inc.__
  Bond Amount          Bond Number                              Principal

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of **PLATTE RIVER INSURANCE COMPANY** at a meeting duly called and held on the 8th day of January, 2002.

"**RESOLVED**, that the President, Executive Vice President, Vice President, Secretary or Treasurer, acting individually or otherwise, be and they hereby are granted the power and authorization to appoint by a Power of Attorney for the purposes solely of executing and attesting bonds and undertakings, and other writings obligatory in the nature thereof, one or more resident vice-presidents, assistant secretaries and attorney(s)-in-fact, each appointee to have the powers and duties usual to such offices to the business of this company; the signature of such officers and seal of the Company may be affixed to any such power of attorney or to any certificate relating thereto by facsimile, and any such power of attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company, and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking or other writing obligatory in the nature thereof to which it is attached. Any such appointment may be revoked, for cause, or without cause, by any of said officers, at any time."

In connection with obligations in favor of the Florida Department of Transportation only, it is agreed that the power and authority hereby given to the Attorney-in-Fact includes any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts required by the State of Florida Department of Transportation. It is fully understood that consenting to the State of Florida Department of Transportation making payment of the final estimate to the Contractor and/or its assignee, shall not relieve this surety company of any of its obligations under its bond.

In connection with obligations in favor of the Kentucky Department of Highways only, it is agreed that the power and authority hereby given to the Attorney-in-Fact cannot be modified or revoked unless prior written personal notice of such intent has been given to the Commissioner – Department of Highways of the Commonwealth of Kentucky at least thirty (30) days prior to the modification or revocation.

IN WITNESS WHEREOF, the **PLATTE RIVER INSURANCE COMPANY** has caused these presents to be signed by its officer undersigned and its corporate seal to be hereto affixed duly attested, this 3rd day of May, 2017.

Attest:

John E. Rzepinski
Vice President, Treasurer & CFO

Suzanne M. Broadbent
Assistant Secretary

STATE OF WISCONSIN
COUNTY OF DANE } S.S.:

PLATTE RIVER INSURANCE COMPANY

Stephen J. Sills
CEO & President

On the 3rd day of May, 2017 before me personally came Stephen J. Sills, to me known, who being by me duly sworn, did depose and say: that he resides in the County of New York, State of New York; that he is President of **PLATTE RIVER INSURANCE COMPANY**, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

STATE OF WISCONSIN
COUNTY OF DANE } S.S.:

David J. Regele
Notary Public, Dane Co., WI
My Commission Is Permanent

I, the undersigned, duly elected to the office stated below, now the incumbent in **PLATTE RIVER INSURANCE COMPANY**, a Nebraska Corporation, authorized to make this certificate, **DO HEREBY CERTIFY** that the foregoing attached Power of Attorney remains in full force and has not been revoked; and furthermore, that the Resolution of the Board of Directors, set forth in the Power of Attorney is now in force.

Signed and sealed at the City of Middleton, State of Wisconsin this____26th____ day of ____October____, 2018.

Antonio Celii
General Counsel, Vice President & Secretary

THIS DOCUMENT HAS BEEN GENERATED FOR A SPECIFIC BOND.    IF YOU HAVE ANY QUESTIONS CONCERNING THE
AUTHENTICITY OF THIS DOCUMENT CALL 800-475-4450.                PR-ePOA (Rev. 05-2017)

## NEW JERSEY SURETY DISCLOSURE STATEMENT AND CERTIFICATION
### (pursuant to N.J.S.A. 2A: 44-143)

**Platte River Insurance Company** surety on the attached bond, hereby certifies the following:

1. The surety meets the applicable capital and surplus requirements of R.S. 17:17-6 or R.S. 17:17-7 as of the surety's most current annual filing with the New Jersey Department of Banking & Insurance.

2. The capital and surplus, as determined in accordance with the applicable laws of New Jersey, of the surety participating in the issuance of the attached bond is in the following amounts as of the calendar year ended December 31, 2017:

| Surety Company | Capital and Surplus |
|---|---|
| Platte River Insurance Company | $48,274,427 |

which amounts have been certified as indicated by the certified public accountants, Ernst & Young LLP, 875 East Wisconsin Avenue, Milwaukee, WI 53202, and are included in the Annual Statements on file with the New Jersey Department of Banking & Insurance, 20 West State Street, PO Box 325, Trenton, NJ 08625-0325.

3. Platte River Insurance Company has a current rating from A.M. Best Company of A (Excellent).

4. Platte River Insurance Company has received from the United States Secretary of the Treasury a Certificate of Authority pursuant to 31 U.S.C. §9305, the underwriting limitation per bond established therein on July 1, 2017 is $4,337,000.

5. The amount of the bond to which this statement and certification is attached is

$ __3,508,849.00__ .

### Certificate

I __Gail M. Perrin__ as __Attorney-In-Fact__ for Platte River Insurance Company
   (Name of Agent)

a corporation admitted in New Jersey, DO HEREBY CERTIFY that, to the best of my knowledge, the foregoing statements made by me are true and ACKNOWLEDGE that if any of those statements are false, this bond is VOID.

_____
(Signature of Certifying Agent)

__Gail M. Perrin__
   (Printed Name of Certifying Agent)

__Attorney-In-Fact__
   (Title of Certifying Agent)

__10/26/2018__
   (Date)

PLATTE RIVER INSURANCE COMPANY
BALANCE SHEET
December 31, 2017

**Admitted Assets**

Cash and invested assets:

| | | |
|---|---|---:|
| Bonds | $ | 99,858,262 |
| Common stocks | | 25,382,170 |
| Cash, cash equivalents and short-term investments | | 18,576,581 |
| Total cash and invested assets | | 143,817,013 |
| | | |
| Investment income due and accrued | | 618,321 |
| Uncollected premiums and agents' balances in course of collection | | 1,305,927 |
| Deferred premiums, agents' balances and installments booked but deferred and not yet due | | 3,062,792 |
| Amounts recoverable from reinsurers | | 1,383 |
| Current federal and foreign income tax recoverable and interest thereon | | 560,354 |
| Net deferred tax asset | | 86,390 |
| Receivables from parent, subsidiaries and affiliates | | 1,331,602 |
| Other admitted assets | | 15,441 |
| Total admitted assets | $ | 150,799,223 |

**Liabilities and Surplus as Regards Policyholders**

Liabilities:

| | | |
|---|---|---:|
| Losses | $ | 32,577,588 |
| Reinsurance payable on paid losses and loss adjustment expenses | | 2,306,236 |
| Loss adjustment expenses | | 7,067,355 |
| Commissions payable, contingent commissions and other similar charges | | 784,193 |
| Other expenses (excluding taxes, licenses and fees) | | 96,835 |
| Taxes, licenses and fees (excluding federal and foreign income taxes) | | 156,912 |
| Unearned premiums | | 20,010,558 |
| Ceded reinsurance premiums payable (net of ceding commissions) | | 766,606 |
| Amounts withheld or retained by company for account of others | | 38,458,953 |
| Other liabilities | | 299,560 |
| Total liabilities | | 102,524,796 |

Surplus as regards policyholders:

| | | |
|---|---|---:|
| Common capital stock | | 4,800,000 |
| Gross paid in and contributed surplus | | 30,739,907 |
| Unassigned funds (surplus) | | 12,734,520 |
| Surplus as regards policyholders | | 48,274,427 |
| Total liabilities and capital and surplus | $ | 150,799,223 |

I, Stephen J. Sills, CEO and President of Platte River Insurance Company do hereby certify that to the best of my knowledge and belief, the foregoing is a full and true statutory Statement of Admitted Assets and Liabilities, Capital and Surplus of the Operation at December 31, 2017, prepared in conformity with the accounting practices prescribed by the Insurance Department of the State of Nebraska.  IN WITNESS WHEREOF, I have set my hand and affixed the seal of the Corporation at Middleton, Wisconsin.

Stephen J. Sills
CEO & President





# State of New Jersey
### DEPARTMENT OF BANKING AND INSURANCE

# CERTIFICATE OF AUTHORITY

DATE: APRIL 24, 2018

NAIC COMPANY CODE: **18619**

THIS IS TO CERTIFY THAT THE **PLATTE RIVER INSURANCE COMPANY** OF **OMAHA, NEBRASKA,** HAVING COMPLIED WITH THE LAWS OF THE STATE OF NEW JERSEY, AND ANY SUPPLEMENTS OR AMENDMENTS THERETO WITH RESPECT TO THE TRANSACTION OF THE BUSINESS OF INSURANCE, IS LICENSED TO TRANSACT IN THIS STATE UNTIL THE FIRST DAY OF **MAY, 2019,** THE LINES OF INSURANCE SPECIFICALLY DESIGNATED BELOW:

      **01 - FIRE AND ALLIED LINES**
      **02 - EARTHQUAKE**
      **03 - GROWING CROPS**
      **04 - OCEAN MARINE**
      **05 - INLAND MARINE**
      **06 - WORKERS COMPENSATION AND EMPLOYERS LIABILITY**
      **07 - AUTOMOBILE LIABILITY BODILY INJURY**
      **08 - AUTOMOBILE LIABILITY PROPERTY DAMAGE**
      **09 - AUTOMOBILE PHYSICAL DAMAGE**
      **10 - AIRCRAFT PHYSICAL DAMAGE**
      **11 - OTHER LIABILITY**
      **12 - BOILER AND MACHINERY**
      **13 - FIDELITY AND SURETY**
      **14 - CREDIT**
      **15 - BURGLARY AND THEFT**
      **16 - GLASS**
      **17 - SPRINKLER LEAKAGE AND WATER DAMAGE**
      **18 - LIVESTOCK**
      **19 - SMOKE OR SMUDGE**
      **20 - PHYSICAL LOSS TO BUILDINGS**
      **26 - ACCIDENT AND HEALTH**



**MARLENE CARIDE**

*ACTING COMMISSIONER*

# EXHIBIT B



Eagleview Corporate Center
747 Constitution Drive
Suite 100
Exton, PA 19341-0673
Tel (610) 458-7500  Fax (610) 458-7337
www.foxrothschild.com

RONALD L. WILLIAMS
Direct No:  610.458.4994
Email: RWilliams@FoxRothschild.com

February 12, 2020

**VIA EMAIL**

J. Michael McCague, Esquire
Griffith, McCague & Happel, P.C.
408 Cedar Avenue
Pittsburgh, PA  15212
*JMM@gmwpclaw.com*

Re:     <u>**Performance Bond S2703038 (the "Performance Bond")**</u>

Dear Mr. McCague:

As you know, this law firm represents M. Cohen and Sons, Inc. ("MCS").

MCS has filed litigation in the Court of Common Pleas, Delaware County, Pennsylvania, outlining W.S. Cumby Inc.'s ("Cumby") default under the Construction Contract.[1]  As such, the Surety should have no obligation to perform under the Performance Bond.

Even if Cumby was not in default under the Construction Contract, the Surety's obligation under the Performance Bond arises only after the provisions of §3.1, 3.2 and 3.3 have been met.  To our knowledge, Cumby has not satisfied §3.3.  That is, Cumby has not agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.  If it is your position that Cumby has satisfied this section, please provide us with evidence thereof.

---

[1] We utilize all capitalized terms as set forth in the Performance Bond.

A Pennsylvania Limited Liability Partnership

California     Colorado     Delaware     District of Columbia     Florida     Georgia     Illinois     Minnesota     Nevada
New Jersey     New York     North Carolina     Pennsylvania     South Carolina     Texas     Virginia     Washington

107613780



J. Michael McCague, Esquire
February 12, 2020
Page 2

It is only after Cumby has satisfied the requirements of §3, that the Surety has an obligation to take one of the actions enumerated in §5.1 through §5.4.

Since October 29, 2019, I have told your colleague, Ron Willis, that MCS is not in default. As such, the Surety should deny liability in whole or in part and notify Cumby, citing the reasons for denial pursuant to §5.4.2.

To the extent the Surety is unwilling to deny liability, then the Surety should explain its position to MCS.

The Performance Bond requires that the Surety act promptly. Given that Cumby terminated the Construction Contract on November 22, 2019, the Surety has had sufficient time to develop its position. However, rather than sharing this position with MCS, the Surety has been more concerned with demanding collateral under a General Indemnity Agreement. Such a demand is inappropriate for numerous reasons, including, but not limited to the fact that Cumby owes MCS substantial sums of money. Thus, Cumby should have sufficient funds to hire a contractor to complete the work under the Construction Contract without incurring additional costs.

I look forward to hearing the Surety's position. If I do not hear from you by noon on Monday, February 17, 2020, I will assume the Surety is unwilling to share its position with MCS.

Thank you.

Very truly yours,

Ronald L. Williams

RLW:snd

cc:    Michael G. Menkowitz, Esquire