**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M. COHEN AND SONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PLATTE RIVER INSURANCE COMPANY and W.S. CUMBY, INC.,<br><br>Defendants.<br><br>v.<br><br>ALLEN COHEN, SUSAN COHEN, HOWARD COHEN, EILEEN COHEN, RONALD COHEN, BARBARA COHEN, SAMUEL COHEN, JANET COHEN, H.R. REED ROAD, L.P., PENMAWR, L.P., H.R. SARASOTA LLC and PENMAWR-FLA, LLC,<br><br>Counterclaim Defendants. | Case No. 3:20-cv-2149 (BRM) (LHG)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two motions: (1) Defendant Cumby, Inc.'s ("Defendant Cumby") Motion to Dismiss pursuant to Federal Rule 12(b)(1) and 12(b)(6) (ECF No. 34); and (2) Defendant Cumby's Motion to Stay this action pending resolution of its Motion to Dismiss. (ECF No. 60.) Plaintiff M. Cohen & Sons, Inc. ("Plaintiff") opposes Defendant Cumby's Motion to Dismiss. (ECF No. 50.) Defendant Platte River Insurance Company ("Defendant Platte River") opposes Defendant Cumby's Motion to Stay in part. (ECF No. 61.) Defendant Cumby filed a Reply to both oppositions. (ECF No. 51; ECF No. 64.) Having reviewed the filings submitted in connection with

the Motions and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendant Cumby's Motion to Dismiss is **GRANTED** and its Motion to Stay is **DENIED AS MOOT.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and Defendant Cumby entered into an agreement on or about March 23, 2018 (the "Agreement"). (Am. Compl. (ECF No. 24) ¶ 8.) Under the Agreement, Plaintiff agreed to perform certain services for Defendant Cumby, and Defendant Cumby agreed to pay for those services. (*Id.*) The Agreement specified Plaintiff would perform the work at the Institute for Advanced Studies, Rubenstein Commons, 50 Maxwell Lane in Princeton, New Jersey. (*Id.* ¶ 9.) Plaintiff alleges Defendant Cumby "failed to meet its contractual obligations" under the Agreement. (*Id.* ¶ 12.) Specifically, "the fluted glass as drawn in the architectural documents could not comply with the contractual specifications." (*Id.* ¶ 14.) This created a faulty design, which "created a life safety issue" that "Defendant Cumby refused to address." (*Id.* ¶¶ 15–16.) Because of these breaches, "Plaintiff commenced litigation against Defendant Cumby in the Court of Common Pleas, Delaware County, Pennsylvania, Docket No. 2019-0009455." (*Id.* ¶ 21.)

On October 26, 2018, in furtherance of the Agreement, "Plaintiff, Defendant Cumby, and Defendant Platte River entered into a Performance Bond whereby Plaintiff and Defendant Platte River bound themselves to Defendant Cumby for the performance of the Agreement" (the "Performance Bond"). (*Id.* ¶ 23.) According to Plaintiff, Defendant Platte River understood Plaintiff was an intended beneficiary to the Performance Bond. (*Id.* ¶ 24.) Under the Performance Bond, Defendant Platte River's obligation to act arises only when Defendant Cumby is not in default, but since Defendant Cumby is in default, Defendant Platte River has no obligation to act. (*Id.* ¶¶ 25–27.) Further, even if Defendant Cumby was not in default, "Defendant Platte River's

obligation to act under the Performance Bond arises only after Defendant Cumby meets the provisions of § 3.1, 3.2, and 3.3 of the Performance Bond." (*Id.* ¶ 28.)

On February 12, 2020, Plaintiff's counsel wrote to Defendant Platte River to confirm whether Defendant Cumby satisfied § 3.3 of the Performance Bond, but Defendant Platte River did not respond. (*Id.* ¶¶ 35–38.) Plaintiff also alleges Defendant Platte River interfered with a subcontract Plaintiff had with Walter P. Moore ("WPM") by requesting documents created by Plaintiff and inviting WPM to attend a meeting at the Project on February 27, 2020. (*Id.* ¶¶ 39–41.) Moreover, Plaintiff alleges after its Complaint was filed on February 27, 2020, Defendant Platte River engaged "in a systematic scheme to defame Plaintiff and to interfere with Plaintiff's contractual business relationships." (*Id.* ¶ 44.)

On April 6, 2020, Plaintiff completed a projected for Clark-McCarthy Healthcare Partners II ("Clark McCarthy"), and Defendant Platte River wrote to Clark-McCarthy demanding that it direct "all future payments to Plaintiff to Defendant Platte River instead." (*Id.* ¶ 46.) On April 10, 2020, Plaintiff wrote to Defendant Platte River "requesting it to cease and desist from interfering with its contractual relationship with Clark-McCarthy" but Defendant Platte River refused to do so. (*Id.* ¶¶ 47–48.) As a result of this interference, Clark-McCarthy will not release the funds earned by Plaintiff to Plaintiff, which resulted in Plaintiff's inability to pay its employees during the pandemic and caused "a loss of Plaintiff's good will," tarnished reputation, and "threatened future losses to Plaintiff's business operations and revenue." (*Id.* ¶¶ 49–53.)

Plaintiff also alleges Defendant Platte River interfered with several general contractors for whom Plaintiff is performing work. Specifically, "representatives of Turner Construction have contacted Plaintiff to say Defendant Platte River has contacted Turner Construction directly and made derogatory statements about Plaintiff." (*Id.* ¶ 55.) Plaintiff and Turner Construction had a

letter of intent for the Ernst & Young Project ("EY Project"), and Plaintiff has started work on the EY Project, but "as the parties are preparing to enter into a contract for the EY Project, Turner Construction is suddenly claiming there may be concerns with entering into a contract with Plaintiff." (*Id.* ¶¶ 56–58.) Plaintiff is also bidding on two projects for Turner Construction, but "Turner Construction has expressed to Plaintiff its concerns over Plaintiff's alleged financial problems—all raised by Defendant Platte River," so Plaintiff is at risk of losing those projects. (*Id.* ¶¶ 59–60.) Plaintiff alleges it "is not on the verge of bankruptcy but does need the money from the Fort Bliss Project and could incur additional financial losses if Defendant Platte River continues to interfere with its contractual relationships." (*Id.* ¶ 66.)

Further, Plaintiff alleges Defendant Platte River has interfered with Plaintiff's contractual relationship with its own accountant Joseph P. Melvin Company, LLC ("Accountant") by threatening litigation against the Accountant for "alleged negligence in preparing various financial statements for Plaintiff upon which Defendant Platte River allegedly relied," but notes "Defendant Platte River is making these unsubstantiated threats merely to gain a tactical advantage over Plaintiff in this litigation." (*Id.* ¶¶ 68–71.) Plaintiff also alleges "Defendant Platte River supplied a bid bond for the Pier 55 Project in Manhattan, New York ("Pier 55") and upon 20% completion of Plaintiff's work on the Pier 55 Project, Defendant Platte River failed to issue a Performance Bond as promised in the bid documents," which resulted in the general contractor's removal of Plaintiff from the Pier 55 Project and resulting damages to Plaintiff. (*Id.* ¶¶ 74–76.)

Lastly, according to Plaintiff, Defendant Platte River and Defendant Cumby conspired together to misappropriate Plaintiff's drawings and calculations. Plaintiff allegedly supplied drawings and calculations to Defendant Cumby, who then, without paying Plaintiff, gave to

Defendant Platte River "to use when Defendant Platte River solicited bidders to replace Plaintiff on the Project." (*Id.* ¶¶ 79–81.)

On February 27, 2020, Plaintiff filed a complaint in this Court. (ECF No. 1.) Then on June 15, 2020, Plaintiff filed an amended complaint. (ECF No. 24.) The Amended Complaint alleged a breach of the Performance Bond, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, and violation of the Defend Trade Secrets Act. (*Id.* ¶¶ 82–109, 115–28.) Plaintiff also seeks a declaratory judgement. (*Id.* ¶¶ 110–14.) All of Plaintiff's allegations are against both Defendant Cumby and Defendant Platte River. (*Id.* ¶¶ 82–128.) On July 2, Defendant Cumby filed a motion to dismiss Plaintiff's amended complaint. (ECF No. 34.) On July 6, 2020, Defendant Platte River answered Plaintiff's Amended Complaint, raised several affirmative defenses, and asserted counterclaims against Plaintiff, Allen Cohen, Susan Cohen, Howard Cohen, Eileen Cohen, Ronald Cohen, Barbara Cohen, Samuel Cohen, Janet Cohen, H.R. Reed Road, LP, H.R. Sarasota, LLC, and Penmawr FLA, LLC (collectively, "Counterclaim Defendants"). (ECF No. 37.) On August 3, 2020, Plaintiff filed an opposition to Defendant Cumby's Motion to Dismiss. (ECF No. 50.) On August 10, 2020, Defendant Cumby filed a reply. (ECF No. 51.) Then, on August 28, 2020, Defendant Cumby filed a motion to stay. (ECF No. 60.) On September 8, 2020, Defendant Platte River opposed the motion. (ECF No. 61.) On September 11, 2020, Defendant Cumby filed a reply. (ECF No. 64.) On September 17, 2020, Magistrate Judge Lois H. Goodman adjourned the motion day for Defendant Cumby's Motion to Stay and permitted each Defendant to file a sur-reply. (ECF No. 65.) On September 21, 2020, Plaintiff opposed the motion to stay. (ECF No. 69.) And on September 24, 2020, Defendant Cumby filed a sur-reply. (ECF No 71.)

## II.   LEGAL STANDARDS

### A.   12(b)(1)

Defendant Cumby moves to dismiss Plaintiff's amended complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am.*, N.A., No. CIV. 12-03922 RBK, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). In considering dismissal for lack of subject-matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Industries, Inc.*, 241 F. Supp. 2d 434 (D.N.J. 2002).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id*. (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id*. (citing *Mortensen v. First Fed. Sav. &*

6

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id*. (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id*.

Here, Defendant Cumby asserts it is making a factual attack. (ECF No. 34-2 at 8.) The Court agrees. *See New York Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*, Civ. A. No. 10-6261, 2012 WL 847425, at *5 (D.N.J. Mar. 13, 2012) (finding a factual 12(b)(1) challenge to the court's jurisdiction when defendants argued the parties' arbitration agreement deprived the court of subject matter jurisdiction).

### B.   Motion to Stay

"A United States district court has broad power to stay proceedings." *Mastec Renewables Constr. Co., Inc. v. Mercer Cty. Improvement Auth.*, Civ A. No. 15-1897, 2017 WL 6493141, at *3 (D.N.J. Dec. 19, 2017) (quoting *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL–CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976)).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, a Court will generally weigh several factors, including:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotations and citations omitted); *see, e.g.*, *Bechtel Corp.*, 544 F.2d at 1215 (stating that a district court may "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues").

## III.   DECISION

### A.   Defendant Cumby's 12(b)(1) Motion to Dismiss

Defendant Cumby argues this Court does not have subject matter jurisdiction over Plaintiff's claims because the parties' contract arbitration clause deprives the court of subject

matter jurisdiction.[1] (ECF No. 34-2 at 7–8.) Defendant Cumby points to the breadth of the arbitration clause in the contract and argues Plaintiff's claims fall within the scope of the clause because "each of them arise out of or relate to the Contract or an alleged breach thereof." (*Id.* at 8–9.) Further, Defendant Cumby contends the arbitration clause survives the termination of the contract because "there is no mention in the contract that the arbitration provision would not survive contract termination," "the time limit for initiating a dispute stretches beyond the life of the contract," and the contract explicitly grants post-termination rights to Defendant Cumby. (*Id.* at 11–12.) Lastly, Defendant Cumby argues it has not waived its right to compel arbitration. (*Id.* at 12–14.)

Plaintiff argues the Court should "look to the Performance Bond, not the MCS/Cumby Contract" in assessing whether breach occurred. (ECF No. 50 at 3.) From this, Plaintiff contends the "Performance Bond does not contain a valid agreement to arbitrate" and neither does the MCS/Cumby Contract, since Defendant Platte River "is not a party to that contract." (*Id.* at 4.)

---

[1] If Defendant Cumby were moving to compel arbitration, the Court would have to review the motion under either a Rule 12(b)(6) standard or a Rule 56 standard, in light of *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013). Defendant Cumby only cites one case decided after *Guidotti* in support of its argument that this Court should grant its 12(b)(1) motion due to the arbitration clause. (ECF No. 34-2 at 8.) However, several cases following *Guidotti* support 12(b)(1) dismissal when a valid arbitration clause exists. *See Organizational Strategies, Inc. v. Feldman Law Firm LLP*, 604 F. App'x 116, 117–19 (3d Cir. 2015) (affirming district court's dismissal of lawsuit for lack of subject matter jurisdiction because the parties' agreement required arbitration); *Hoboken Yacht Club LLC v. Marinetek N. Am. Inc.*, Civ. A. No. 19-12199, 2019 WL 7207486, at *2, *5 (D.N.J. Dec. 26, 2019) (noting "Pursuant to Defendant's motion, this Court proceeds on the theory of lack of subject matter jurisdiction"); *Laudano v. Credit One Bank*, Civ. A. No. 15-7668, 2016 WL 3450817, at *4 (D.N.J. June 22, 2016) ("In this Circuit, courts generally, but not uniformly, have accepted and embraced Rule 12(b)(1) as a proper vehicle for deciding whether to dismiss a suit by virtue of an arbitration agreement between the parties.")(citations omitted).

Further, Plaintiff notes the MCS/Cumby Contract does not explicitly provide that the arbitration clause survives termination like its indemnification clause does. (*Id.* at 4–5.) And Plaintiff points out that Defendant Cumby waived its right to arbitration because it failed to proceed with the arbitration process. (*Id.* at 5.)

"Courts may use Rule 12(b)(1) to decide whether to dismiss a suit by virtue of an arbitration agreement between the parties." *Daly v. Norfolk S. R. Co.*, Civ. A. No. 09-4609, 2011 WL 2559533, at *1 (D.N.J. June 27, 2011). That is, "[a] valid and enforceable arbitration agreement will divest the court of subject matter jurisdiction over the arbitrable disputes." *Hemberger v. E*Trade Fin. Corp.*, Civ. A. No. 07-1621, 2007 WL 4166012, at *3 (D.N.J. Nov. 19, 2007) (citing 9 U.S.C. § 2); *Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, Civ. A. No. 05-54, 2005 WL 1677479, at *9 (D.N.J. July 15, 2005) ("[A]n arbitration defense challenges the court's subject matter jurisdiction over the case and is properly raised in a Rule 12(b)(1) motion.").

There is a "strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). "A court will direct parties to proceed with arbitration if a dispute falls within the scope of the arbitration agreement." *Mroczkowski v. FedEx Ground Package Sys., Inc.*, Civ. A. No. 09-34, 2009 WL 1298434, at *2 (D.N.J. May 8, 2009) (citing 9 U.S.C. § 3; *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)). In deciding whether a controversy must be submitted to arbitration under the FAA, the Court must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co.*, 401 F.3d at 532; *Asbell v. Integra Lifesciences Holdings Corp.*, Civ. A. No. 14-677, 2014 WL 6992000, at *2 (D.N.J. Dec. 10, 2014). In making this decision, the court should apply state contract principles.

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F. 3d 595, 603 (3d Cir. 2002).

The first issue presented to the Court by the parties is whether there was a valid agreement to arbitrate. The MCS/Cumby Contract includes an arbitration clause, which provides:

> Any or all claims, disputes, controversies or other matters in question arising out of, or relating to, the Agreement, or the breach thereof, shall, at the sole election of the Contractor, be decided by arbitration. The Subcontractor shall have no right to initiate arbitration proceedings against the Contractor without the Contractor's prior written consent thereto. In the event the Contractor elects to arbitrate, such arbitration shall, at the sole election of the Contractor, be conducted either in accordance with the then prevailing Construction Industry Arbitration Rules of the American Arbitration Association, or if such rules deviate from the dispute resolution provisions set forth in the contract between the Owner and the Contractor, then in accordance with such dispute resolution provisions. The Subcontractor hereby agrees that the Contractor shall have the right to include the Subcontractor, by consolidation, joinder, or in any other manner, in any arbitration proceedings involving the Owner, the Architect, or involving other subcontractors or suppliers on the Project, regardless of who originally initiated such proceedings. The foregoing agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. Unless the Contractor elects otherwise, any arbitration proceedings hereunder shall be held in Philadelphia, Pennsylvania and shall be administered by the Philadelphia office of the American Arbitration Association. Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

(ECF No. 34-5 at 38–39.) Plaintiff does not deny the existence of this clause in the MCS/Cumby Contract. (*See* ECF No. 50 at 3–5.) Instead, Plaintiff argues this action "arises out of the parties' performance, or lack thereof, under the Performance Bond." (*Id.* at 3.) According to Plaintiff, the "Court must look to the Performance Bond, not the MCS/Cumby Contract to which Platte River is not a party," in deciding whether a valid arbitration clause existed. (*Id.*) Plaintiff emphasizes it,

Defendant Cumby, and Defendant Platte River were in a suretyship, but since Defendant Platte River was not a party to the MCS/Cumby Contract, the arbitration agreement contained in that contract is not valid. (*Id.* at 4.) In deciding this first issue, the Court must decide whether: (1) the Performance Bond properly incorporated the arbitration provision of the MCS/Cumby Contract; and, if so, (2) whether those provisions should be imposed on Defendant Platte River when it was not a party to the MCS/Cumby Contract.

The MCS/Cumby Contract specifies "the law of the State in which the Contractor's home office, identified on the face hereof, is located, not including choice of law analysis, shall be applicable to this Contract and shall be used to decide any dispute related to this Contract." (ECF No. 34-5 at 38.) The Contractor's home office is located in Delaware County, Pennsylvania. (ECF No. 34-2 at 1.) Therefore, Pennsylvania law will govern the issue of incorporation. *See Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 533 (3d Cir. 2009) (applying Pennsylvania law because parties "predominantly cite[d] Pennsylvania state court cases on the issues in [the] case" and the choice of law provision in the contract at issue suggested Pennsylvania law applied).

Pennsylvania contract law recognizes the doctrine of incorporation by reference. *In re Estate of Atkinson*, 231 A.3d 891, 899 (Pa. Super. 2020) ("The terms of a contract include terms in documents that a signed contract document specifically and clearly identifies and expressly incorporates by reference."); *Southwestern Energy Production, Co. v. Forest Resources, LLC*, 83 A.3d 177, 187–88 (Pa. Super. 2013) (same). Importantly, the doctrine of incorporation by reference has been applied by Pennsylvania courts in the context of arbitration clauses. *Century Indemnity Co*, 584 F.3d at 534 (finding that under Pennsylvania law, party was bound by an

arbitration clause in an agreement between other parties that its contract incorporated by reference).

*Century Indemnity Co.* dealt with the issue of arbitration agreements incorporated by reference under Pennsylvania law. The case involved a dispute between Century Indemnity Co., a reinsurer, and Lloyd's, a retrocessionaire. *Id.* at 519. "The reinsurance of a reinsurance is called a retrocession, and the reinsurers of reinsurers—that is, reinsurers who assume retrocession risk through retrocessional agreements—are called retrocessionaires." *Id.* Century Indemnity Co.'s predecessor, the Insurance Company of North America, had formed reinsurance treaties with Argonaut Insurance Company, the original insurer of the insured in the policies that led to the dispute. *Id.* Century sued Lloyd's to recover amounts that Lloyd allegedly owed Century under the retrocessional agreements. *Id.* at 520. Lloyd's argued "the retrocessional agreements incorporated the reinsurance treaties' arbitration clauses and that therefore the dispute should be arbitrated." *Id.* The arbitration clause in the reinsurance treaties stated "if any dispute shall arise between Argonaut and INA (Century) with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, the dispute shall be referred to arbitration." *Id.* And the retrocessional agreements "between Century and Lloyd's contain language referring to and incorporating 'all' of the reinsurance treaties." *Id.*

Lloyd's argued the court should follow three federal court surety cases "to hold that a party to a contract containing an arbitration clause . . . may be compelled pursuant to that contract's arbitration clause to arbitrate a dispute with a third party arising under a second contract . . . where the second contract incorporated the first contract's terms" through an incorporation-by-reference clause. *Id.* at 536. After undertaking a painstaking analysis of the cases cited by Lloyd's, the court noted "the foregoing opinions of three courts of appeals are in harmony with the principle that a

general incorporation clause effectively can incorporate an arbitration agreement." *Id.* at 538. The court ultimately found in Lloyd's favor, holding "the retrocessional agreements between Century and Lloyd's to incorporate the arbitration agreement of the reinsurance treaties between Century and Argonaut, Century's reinsured, so that the arbitration agreement became effective between Century and Lloyd's." *Id.* at 559.

Here, the Performance Bond contains a provision incorporating the MCS/Cumby Contract. It states, "[t]he Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference." (ECF No. 24 Ex A. (The Performance Bond) at § 1.) For clarity, the Contractor is Plaintiff, the Surety is Defendant Platte River, the Owner is Defendant Cumby, and the Construction Contract refers to the MCS/Cumby Contract. *See id*. That is, the Performance Bond "clearly identifies and expressly incorporates" the MCS/Cumby Contract by reference. *In re Estate of Atkinson*, 231 A.3d at 899. Therefore, the terms of the Performance Bond necessarily include the arbitration clause contained in the MCS/Cumby Contract.

Next, the Court must decide whether the arbitration clause applies to Defendant Platte since they were not a party to the MCS/Cumby Contract. The issue here is similar to the one faced by the court in *Century Indemnity Co.* Plaintiff and Defendant Cumby entered into a contract that contained an arbitration clause, just as the reinsurance treaties between Century and Argonaut did. *Century Indemnity Co*, 584 F.3d at 519–20. Defendant Cumby is attempting to enforce that provision and enter arbitration against a non-party to the contract that contained the arbitration clause, Defendant Platte River. This is similar to Lloyd's argument that the arbitration clause should apply to it, despite being a non-party to the contract between Century and Argonaut, which contained the arbitration clause. *Id.* at 536. Because Plaintiff, Defendant Cumby, and Defendant

Platte River are all parties to the Performance Bond, and the Performance Bond incorporated the MCS/Cumby Contract—and the arbitration clause contained within it—that clause can be applied to Defendant Platte River. *See id.* at 559. Therefore, Plaintiff's argument that the arbitration agreement contained in the MCS/Cumby Contract is invalid because Defendant Platte River was not a party to it, despite being in a suretyship with Plaintiff and Defendant Cumby, is unpersuasive. *See Hoffman v. Fid. & Deposit Co. of Maryland*, 734 F. Supp. 192, 194 (D.N.J. 1990) ("The Eleventh, Sixth, Fifth, Second and First Circuits, and several district courts, have required sureties to arbitrate issues relating to a performance bond where the performance bond incorporates by reference a contract containing an arbitration clause."); *cf. Cost Bros. v. Travelers Indem. Co.*, 760 F.2d 58, 61 (3d Cir. 1985) (finding surety was not a party to the arbitration agreement because the performance bond did not incorporate the contract containing the arbitration clause by reference).

The Court will now consider whether the arbitration clause survived the termination of the contract. Defendant Cumby argues the arbitration clause survives the termination of the contract. (ECF No. 34-2 at 10–12.) Without citing any caselaw, Plaintiff argues that since the MCS/Cumby Contract specifically provided that the indemnification clause survived termination, Defendant Cumby's failure to specify that the arbitration clause survived termination of the contract means "the Arbitration Clause does not survive Cumby's termination of the Contract and is not enforceable." (ECF No. 50 at 4–5.)

"When parties have agreed to a broad arbitration clause, the duty to arbitrate survives termination of the agreement if the dispute arises under the expired agreement." *Nibbs v. Felix*, 726 F.2d 102, 104 (3d Cir. 1984) (citing *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243 (1977)); also citing *Federated Metals Corp. v. United*

15

*Steelworkers of America*, 648 F.2d 856, 961 (3d Cir. 1981)). Under Pennsylvania law, an arbitration clause will typically be enforced when "there is nothing in the arbitration clause that even suggests, much less states with positive assurance, that the arbitration clause is susceptible of an interpretation that disputes arising after the termination of the [contract] are not subject to the reach of the arbitration clause." *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 367 (E.D. Pa. 2003); *cf. Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964) (finding arbitration clause inapplicable after termination of the contract because the contract's language indicated "that the parties only intended the arbitration clause to be used during the life of the operation of the contract and not to extend after the contract had been terminated by performance, breach, or otherwise"). Plaintiff's sole argument that the arbitration clause does not survive termination is unavailing because the MCS/Cumby Contract does not contain explicit language indicating an intent of the parties to limit the clause to the operation of the contract. Tellingly, the MCS/Cumby Contract allows for arbitration claims to be brought after substantial completion of the contract. Indeed, the MCS/Cumby Contract specifies that any arbitration claim "by the Subcontractor arising out of or related to the Agreement shall be commenced . . . in no event later than one year after substantial completion of the Subcontractor's performance of this Subcontract or after the Subcontractor's last work under this Subcontract, whichever is earlier." (ECF No. 34-5 at 38.) Therefore, the Court finds the arbitration clause survives termination of the contract.

The last issue for the Court to consider is whether Defendant Cumby waived its right to arbitrate. Here, Defendant Cumby argues its decision to "wait to issue a non-refundable payment of $7,000 until after the Court of Common Pleas ruled on [its] Preliminary Objections seeking dismissal of that case in favor of arbitration does not constitute waiver." (ECF No. 34-2 at 13.)

Plaintiff argues Defendant Cumby waived any right to arbitrate because Defendant Cumby "failed to pay the $7,000 filing fee." (ECF No. 50 at 5.)

The Supreme Court has clarified 9 U.S.C. § 2 reflects a liberal policy favoring arbitration. *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)).

> Given this strong preference to enforce private arbitration agreements, we will not infer lightly that a party has waived its right to arbitrate and we will find that a party has waived the right 'only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.

*Cassady*, 654 F.3d at 451 (citing *PaineWebber Inc v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995)). Here, Plaintiff has not met the high bar of showing Defendant Cumby waived its right to arbitration. Therefore, the Court finds Defendant Cumby has not waived its right to arbitration. Accordingly, because there was a valid arbitration clause that survived the termination of the MCS/Cumby Contract and was not waived by Defendant Cumby, the arbitration clause will be enforced.[2]

Accordingly, Defendant Cumby's Motion to Dismiss is **GRANTED.**[3]

---

[2] The claims at issue here also fall within the scope of the arbitration clause. *Trippe Mfg. Co.*, 401 F.3d at 532. Plaintiff argues its claims are outside of the scope of the arbitration clause at issue because they relate to the breach of the Performance Bond. (ECF No. 50 at 4.) However, since the Performance Bond incorporates the terms of the MCS/Cumby Contract, which contains the arbitration clause, the claims arising from the Performance Bond fall within the scope of the arbitration clause.

[3] For clarity, Plaintiff's Amended Complaint is only dismissed as to Defendant Cumby. Defendant Cumby was the only party moving to dismiss Plaintiff's Amended Complaint. (*See* ECF No. 34.) Instead of moving to dismiss Plaintiff's Complaint, Defendant Platte River answered Plaintiff's Amended Complaint and asserted various counterclaims against the Counterclaim Defendants. (ECF No. 37.) Counterclaim Defendants answered Defendant Platte River's counterclaims (ECF No. 53), but there are no pending motions involving the counterclaims. Further, Defendant Cumby and Defendant Platte River agree the Counterclaim Defendants were not parties to the arbitration

**B.   Defendant Cumby's Motion to Stay**

On August 28, 2020, Defendant Cumby filed a motion seeking an order staying this action pending resolution of its motion to dismiss Plaintiff's amended complaint. (ECF No. 60.) Because the Court has resolved Defendant Cumby's Motion to Dismiss, Defendant Cumby's Motion to Stay this action pending the resolution of its motion to dismiss is **DENIED AS MOOT**.

**IV.   CONCLUSION**

For the reasons set forth above, Defendant Cumby's Motion to Dismiss is **GRANTED** and its Motion to Stay is **DENIED AS MOOT**. An appropriate Order follows.

Date: February 27, 2021                                   *s/ Brian R. Martinotti*
                                                          HON. BRIAN R. MARTINOTTI
                                                          UNITED STATES DISTRICT JUDGE

---

agreement. (ECF No. 64 at 2 n.1, 3; ECF No. 61 at 1, 6.) Therefore, the dismissal of Plaintiff's Amended Complaint does not impact Defendant Platte River's assertion of counterclaims against the Counterclaim Defendants. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 (3d Cir. 2011) ("Generally speaking, the dismissal of the complaint 'will not preclude adjudication of a counterclaim over which the court has an independent basis of jurisdiction.'") (citing *Rengo Co. Ltd. v. Molins Mach. Co., Inc.,* 657 F.2d 535, 539 (3d Cir.1981)). The Court has jurisdiction over Defendant Platte River's Counterclaims pursuant to § 28 U.S.C. 1332.