**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M. COHEN AND SONS, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> PLATTE RIVER INSURANCE COMPANY, <br><br> Defendant/Counterclaim Plaintiff, <br><br> v. <br><br> ALLEN COHEN, *et al.*, <br><br> Counterclaim Defendants. | Civil Action No. 20-2149 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on Platte River Insurance Company's ("Platte River") appeal, under Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c), of the Magistrate Judge's November 9, 2022 Memorandum Opinion and Order (the "Magistrate Judge's Opinion," ECF No. 177), granting M. Cohen and Sons, Inc. ("MCS" or "Cohen") leave to file a Second Amended Complaint ("SAC"). (ECF No. 198.) MCS opposed the appeal. (ECF No. 201.) Platte River replied. (ECF No. 202.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Magistrate Judge's Opinion is **AFFIRMED**.

1

**I.       BACKGROUND AND PROCEDURAL HISTORY**

In this action, MCS, a specialty subcontractor on a construction project in Princeton, New Jersey, seeks to recover damages it sustained due to the alleged misconduct of its surety, Platte River. The facts of this case have been set forth extensively in prior docketed entries and are well-known to the parties. As such, the Court will not recount them in detail here. For context as to the present appeal, the relevant procedural history, as set forth in the Magistrate Judge's Opinion, is reproduced below:

> On February 27, 2020, Cohen initiated this action against Platte River alleging the following Counts: (1) Breach of the Performance Bond; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Declaratory Judgment; and (4) Tortious Interference with Contractual Relations. (*See generally* Dkt. No. 1). On June 15, 2020, Cohen filed its First Amended Complaint ("FAC"), naming W.S. Cumby, Inc. ("Cumby") as a Defendant and adding a fifth count alleging a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq*. (*See generally* Dkt. No. 24). On July 2, 2020, Cumby filed a motion to dismiss the FAC. (Dkt. No. 34). On February 27, 2021, the Court granted Cumby's motion to dismiss, terminated Cumby from this action, and directed Cohen to file an amended complaint within thirty (30) days. (*See* Dkt. Nos. 81 & 82).
>
> On April 23, 2021, the Court entered an amended pretrial scheduling order that required any motion to amend the pleadings or to join new parties be filed by no later than July 9, 2021. (Dkt. No. 83). On September 7, 2021, upon the joint request of the parties, the Court extended the deadlines for fact discovery to January 14, 2022, expert discovery to May 8, 2022, and dispositive motions to July 11, 2022. (Dkt. No. 88). On December 14, 2021, again upon the joint request of the parties, the Court amended the scheduling order to further extend the deadlines for, *inter alia*, fact discovery and dispositive motions to April 25, 2022 and October 28, 2022, respectively. (Dkt. No. 109). The parties made no application to extend the deadline for amendment of pleadings in either joint request.
>
> On March 7, 2022, following a telephonic status conference, the Court ordered the parties to submit a joint letter detailing "whether the new damages claims give rise to a need to amend the complaint, to add a new cause of action or instead relate to discovery and scheduling issues." (Dkt. No. 121). Following a reassignment of the assigned Magistrate Judge, on April 11, 2022, the Court directed that any motion for leave to amend be filed by April 22, 2022. (Dkt. No. 128).

> On April 22, 2022, Cohen filed the instant motion seeking leave to amend the FAC to: (1) add more detailed allegations that specifically identify the projects Cohen alleges it lost as a result of Platte River's alleged misconduct; (2) clarify how Platte River's alleged misconduct caused Cohen to lose projects; (3) revise Cohen's claim for tortious interference with contractual relations to include prospective economic advantage; (4) elaborate on Platte River's actions severing the relationship with Cohen with respect to the alleged violation of the implied covenant of good faith and fair dealing; and (5) further detail the allegations supporting Cohen's DTSA claim. (*See* Dkt. No. 130-1 at p. 6).

(*See* Magistrate Judge's Opinion at 2–3.) Over Platte River's opposition, the Magistrate Judge granted MCS's motion to amend, finding MCS (i) established good cause under Rule 16 and (ii) that the proposed amendments were not futile under Rule 15. (*Id.* at 6–12.)

After MCS filed the SAC, Platte River appealed the Magistrate Judge 's Opinion, asserting that (i) the Magistrate Judge's good cause finding was contrary to law because MCS possessed the information forming the basis of the pleading amendments well before the July 9, 2021 deadline for motions to amend and (ii) the Magistrate Judge's futility analysis was contrary to law. (*See* Platte River Opening Br., ECF No. 198-1.) MCS filed an opposition brief. (*See* MCS Opp'n Br., ECF No. 201.) Platte River replied. (*See* Platte River Reply Br., ECF No. 202.)

## II.   STANDARD OF REVIEW

"On appeal from a magistrate judge's ruling on non-dispositive matters, which include motions to amend the pleadings, *Patel v. Meridian Health Sys.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998)), the district court must determine whether the order is 'clearly erroneous or contrary to law.'" *Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-694, 2020 WL 5810561, at *1 (D.N.J. Sept. 30, 2020) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) (district judge to "modify or set aside any part of the order that is clearly erroneous or is contrary to law")). "This

3

standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo*." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).

A ruling is "clearly erroneous" where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

"The party filing the appeal has the burden of demonstrating that the magistrate's decision was clearly erroneous or contrary to law." *Evans v. Emp. Benefit Plan*, No. 03-4915, 2007 WL 77325, at *1 (D.N.J. Jan 8, 2007) (citing *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 591 (D.N.J. 1994)). "Unless that burden is met, the magistrate judge's findings should not be rejected even if the district court could have decided the matter differently." *Id.* (citing *Andrews v. Goodyear Tire & Rubber, Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000)).

### III.   DISCUSSION

Platte River appeals the Magistrate Judge's Opinion, asserting it is clearly erroneous and contrary to law. First, Platte River argues that the Magistrate Judge incorrectly found that MCS established good cause under Rule 16(b)(4), despite MCS possessing the knowledge necessary to file a motion to amend its complaint prior to the July 9, 2021. (*See* Platte River Opening Br. at 16–22.) Second, Platte River asserts that the Magistrate Judge's futility analysis under Rule 15 was contrary to law because (i) the Magistrate Judge failed to address case law regarding surety right-to-settle clauses in general indemnity agreements that precludes MCS's contract claims; (ii) the Magistrate Judge improperly found that MCS's allegations were sufficient to state viable tortious

4

interference claims; and (iii) the Magistrate Judge erred in finding that MCS could state a *prima facie* case under the DTSA. (*See id.* at 23–50.) Platte River fails to meet its onerous burden to show that the Magistrate Judge's Opinion should be reversed.

### A. "Good Cause" – Rule 16(b)(4)

"Where deadlines for amending pleadings are the subject of a scheduling order and the deadlines have passed, the moving party must meet Rule 16's good cause standard in order to amend." *Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (citing *E. Minerals & Chemicals Co. v. Mahan,* 225 F.3d 330, 340 (3d Cir. 2000)). "Good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." *Young v. United States*, 152 F. Supp. 3d 337, 352–53 (D.N.J. 2015). "What will constitute 'good cause' to warrant modification 'necessarily varies with the circumstances of each case.'" *High 5 Games, LLC v. Marks*, No. 13-7161, 2017 WL 349375, at *1 n.2 (D.N.J. Jan. 24, 2017) (quoting 6A Alan Wright *et al.*, Federal Practice & Procedure § 1522.2, at 313 (3d ed. 2010)). As such, courts have "great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Fed. R. Civ. P. 16(b)." *Thoman v. Philips Med. Sys.*, No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007).

Here, in finding MCS established good cause, the Magistrate Judge explained that although MCS "did not formally request an extension of the deadline to amend or add new parties, both parties consented to extensions of many discovery-related deadlines"; that MCS asserted that the need to amend arose after its January 21, 2022 supplementation of its interrogatories; and that "the parties were disputing whether amendment was required for some time." (Magistrate Judge's

Opinion at 6.) Additionally, it is notable that, while the original July 9, 2021 deadline had passed, the Magistrate Judge was aware that the issue of amendment had been raised among the parties amid the various discovery disputes in late 2021 and early 2022. Indeed, the issue of whether MCS even needed to establish good cause was disputed because on April 11, 2022, the Magistrate Judge had ordered that "[a]ny motion for leave to amend must be filed by 4/22/2022," thus setting a new deadline. (*See* ECF No. 128.)

In support of its argument, Platte River chronologically lists information that was available to MCS regarding its amendments prior to the original July 9, 2021 deadline and insists that MCS's undisputed possession of such information demonstrates that it did not exercise due diligence in failing to comply with the Amended Scheduling Order (ECF No. 83). (*See* Platte River Opening Br. at 14–15.) But even accepting Platte River's contention that MCS possessed certain information supporting its amendments prior to the July 9, 2021 deadline, it does not necessarily follow that the Magistrate Judge's good cause finding was contrary to law or an abuse of the "great discretion" the Magistrate Judge must be afforded with respect to determining if good cause exists. The Magistrate Judge's reasoning with respect to the discovery disputes among the parties, including the fact that the parties had actively discussed the need for amendment throughout those disputes, is sufficient and need not be disturbed on appeal. Further, because the Magistrate Judge formally entered a new deadline for motions to amend in April 2022, any concern that "scheduling orders would otherwise 'be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired,'" *Stallings*, 2009 WL 2905471, at *16 (quoting *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990)), is especially alleviated here. The Magistrate Judge's Opinion is, therefore, affirmed as to the Rule 16 issue.

6

B.     **"Futility" – Rule 15**

"The futility of a proposed amended pleading is evaluated under the same standard of legal sufficiency as a motion to dismiss under Rule 12(b)(6)." *Brainbuilders, LLC v. Optum, Inc.*, No. 18-638, 2019 WL 2315389, at *5 (D.N.J. May 31, 2019) (citing *Travelers Indem. Co. v. Dammann & Co.* 594 F.3d 238, 243 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A determination as to futility does not require a conclusive determination on the merits of a claim or defense; rather, the futility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face." *Pharm. Sales & Consulting Corp.*, 106 F. Supp. 2d at 764. "[G]iven the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Id.*; *see Brainbuilders*, 2019 WL 2315389, at *5 (stating that "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper") (emphasis in original) (internal quotation marks and citations omitted).

1.     Breach of Contract (Proposed Counts I–III)

In the SAC, MCS asserts causes of action for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and declaratory judgment (Count III), regarding Platte River's contractual obligations under the General Indemnity Agreement ("GIA") and Performance Bond ("PB"), and its alleged failure to carry out those obligations by settling a claim under the PB in favor of the general contractor of the relevant construction project. (*See* SAC ¶¶ 36–63, 182–218.) According to Platte River, the Magistrate Judge's futility analysis as to these claims erred by (1) disregarding case law recognizing that an uncollateralized surety owes

7

its indemnitors no contractual duty to refrain from settling claims against the surety; (2) accepting MCS's argument that the GIA and PB amounted to an integrated contract; and (3) finding that MCS's interpretation of the GIA created a contractual ambiguity, where no such ambiguity exists. (*See* Platte River Opening Br. at 25.)

First, Platte River argues that the Magistrate Judge disregarded *United States Fidelity & Guaranty Co. v. Feibus*, 15 F. Supp. 2d 579 (M.D. Pa. 1998), *aff'd*, 185 F.3d 864 (3d Cir. 1999), and other related case law, which concerns the right of an uncollateralized surety to settle bond claims over the objections of its indemnitors, regardless of whether the surety was liable for the underlying claim. (*See* Platte River Opening Br. at 26–28.) While the Magistrate Judge's Opinion does not expressly address such case law, Platte River's argument relying on the same does not necessarily preclude MCS's contractual claims here. The district court in *Feibus* recognized that '[s]ureties enjoy . . . discretion to settle claims because of the important function they serve in the construction industry." 15 F. Supp. 2d at 585. But, at the same time, it also acknowledged that "[c]ourts have recognized that the one exception to enforcement of a principal's liability for a surety's disbursement is bad faith or fraudulent payment." *Id.* Here, MCS alleges that Platte River's payment to the general contractor of the relevant project was made in bad faith and with fraudulent purpose—indeed, such allegations are the theme of MCS's SAC. (*See* SAC ¶¶ 6–8, 10, 72–85, 191–212.) Moreover, as the district court in *Feibus* expressly stated "summary judgment is an appropriate method of resolving disputes concerning indemnification agreements." 15 F. Supp. 2d at 581. Platte River does not cite to any authority holding that allegations of bad faith and fraud related to a surety's settlement payment, like those set forth here, are *per se* futile for amendment purposes.

8

Second, Platte River argues that the GIA and PB cannot be considered an integrated contract and the Magistrate Judge erred in holding as much. (*See* Platte River Opening Br. at 32.) However, acknowledging that the parties disagree on the integration of the agreements, the Magistrate merely refrained from ruling on the integration of the two agreements because such analysis depends on the intent of the parties and any ruling as to the parties' intent is ill-suited for resolution at the motion to dismiss stage. (*See* Magistrate's Opinion at 7–8.) These propositions of law are well established. *See Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982) (3d Cir. 1982) (explaining that "two or more writings may constitute a single contract even though they do not refer to each other," but "[w]hether two writings are to be construed as a single contract, however, depends on the intent of the parties"); *Blackberry Ltd. v. PCS Wireless LLC*, No. 15-1070, 2016 WL 1313161, at *4 (D.N.J. Apr. 4, 2016) ("The parties' intent at the time the contract was drafted, for example, is ill-suited to resolution on a motion to dismiss."). As such, the Magistrate Judge did not err in declining to resolve the issue at this stage of the case. Even the primary authority upon which Platte River relies addresses competing arguments as to integration at summary judgment. *See, e.g.*, *Cont'l Cas. Co. v. Fleming Steel Co.*, 439 F. App'x 134, 136 (3d Cir. 2011).

Third, Platte River argues that the Magistrate incorrectly found that the parties had competing, reasonable interpretations of the GIA, such that it is ambiguous regarding the surety's right to determine liability. (*See* Platte River Opening Br. at 36.) According to Platte River, its right to determine liability under the GIA is unambiguous because MCS's interpretation of Section 5(b) and 10 is not objectively reasonable. (*See id.* at 37 (citing *United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 107 (2d Cir. 1993).) MCS maintains that, read together, Sections 5(b) and 10 mean that Platte River would have the exclusive right to settle any PB claim only if

9

MCS failed to adjust, settle, or compromise any claim upon the PB, and that MCS sought to adjust the defective PB claim of the general contractor by instituting litigation against it. (*See* MCS Opp'n Br. at 33.) Platte River asserts that this interpretation is incorrect because the term "adjust" cannot be construed to include litigation. (*See* Platte River Opening Br. at 38.) But, absent any controlling authority on the matter, Platte River's argument that MCS's interpretation of the GIA is not reasonable ultimately amounts to mere disagreement. The Magistrate Judge appropriately recognized this disagreement and found that the ambiguity of the GIA precluded a legal conclusion on the merits of the competing interpretations. Accordingly, the Magistrate Judge did not err in the futility analysis as to MCS's contract claims.

### 2. Tortious Interference (Proposed Count IV)

The SAC amends MCS's prior tortious interference with contract claim, by adding a claim for tortious interference with a prospective economic advantage. (*See* SAC ¶¶ 219–26.) Specifically, MCS alleges that it lost several projects that it otherwise would have secured because Platte River's conduct caused other surety companies to decline to issue bonds to MCS. (*See id.* ¶¶ 123–66.) According to Platte River, the Magistrate Judge erred in finding that MCS had alleged a *prima facie* case of tortious interference with a prospective economic advantage because MCS failed to include allegations that the other sureties knew about Platte River's conduct. (*See* Platte River Opening Br. at 41.) However, merely because MCS does not accuse Platte River of interfering directly with third-party sureties does not insulate it from the consequences of alleged statements to contractors about MCS, which may have affected its economic prospects in the industry.

"[I]nterference with prospective economic advantage may also be established by showing conduct not necessarily directed at the third party, but which improperly impinged upon the claimant's reasonably expected economic advantage from or with regard to that third party." *Cent.*

10

*Paper Distrib. Servs. v. Int'l Records Storage & Retrieval Serv., Inc.*, 325 N.J. Super. 225, 233 (App. Div. 1999). The Magistrate Judge correctly noted that MCS has alleged statements, made to contractors, which ultimately resulted in MCS's loss of ability to secure bonds for projects. This type of alleged indirect interference is not necessarily implausible on its face, and Platte River does not cite any authority indicating as much. To be sure, beyond the pleadings stage, MCS will be required to support its allegations with evidence that Platte River's actions caused a loss of anticipated economic benefits. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 759 (1989) ("A plaintiff shows causation when there is 'proof that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.'") (citation omitted). The Magistrate Judge did not err in finding that MCS set forth sufficient allegations for its additional tortious interference claim.

    3.  <u>DTSA (Proposed Count V)</u>

MCS also proposed amendments related to its DTSA claim. As the Magistrate Judge set forth, to state a claim under the DTSA, a plaintiff must allege (1) the existence of a trade secret that the owner had taken reasonable measures to keep secret, (2) related to a product or service used in commerce, (3) that was misappropriated. *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). According to Platte River, the Magistrate Judge erred in finding that MCS's amendments were not futile under the DTSA because MCS failed to allege (i) that it took reasonable measures to protect its trade secrets and (ii) that there was acquisition by improper means. (*See* Platte River Br. at 48.) But, in the SAC, MCS does set forth specific ways in which it protects its drawings and calculations. (*See* SAC ¶¶ 90–94.) And the reasonable inference from such allegations is that MCS employed the enumerated practices and policies with respect to the subject drawings and calculations at issue here. (*See* SAC ¶ 231.) Further, nonpayment or misrepresentation in the acquisition of trade secrets constitutes improper means under the DTSA.

*See* 18 U.S.C. 1839(6)(A). Even if MCS's DTSA claim is "overreaching," as Platte River claims, the Court is not convinced that amendment of the claim is "*clearly* futile" such that leave to amend was unwarranted. *See Brainbuilders*, 2019 WL 2315389, at *5.

In opposing amendment in this case and subsequently appealing the Magistrate Judge's Opinion, Platte River fails to acknowledge the liberal standard applied to the amendment of pleadings. As stated above, "[a] determination as to futility does not require a conclusive determination on the merits of a claim or defense," and, therefore, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Pharm. Sales & Consulting Corp.*, 106 F. Supp. 2d at 764. Platte River did not meet that burden, and thus the Magistrate Judge's Opinion granting leave to amend was neither clearly erroneous nor contrary to law.

## IV.   CONCLUSION

For the reasons stated above, the Magistrate Judge's Opinion granting leave to amend is **AFFIRMED**. An appropriate Order will follow.

Date: **May 30, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
