

Mail: P. O. Box 5231, Princeton, NJ 08543-5231
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ  08648
609.896.3600   609.896.1469
www.foxrothschild.com

CORINNE MCCANN TRAINOR
Direct No: 609-844-3038
Email: CTrainor@FoxRothschild.com

February 23, 2024

**VIA ECF**
Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    **M. Cohen and Sons, Inc. v. Platte River Ins. Co., et al.**
            **Docket No.: 3:20-cv-02149**

Dear Judge Singh:

      This firm represents Plaintiff M. Cohen and Sons, Inc. and the Counterclaim Defendants (collectively "MCS"). Pursuant to Text Orders 282 and 286, we submit this letter pursuant to Local Civil Rule 37.1 in response to Platte River's discovery letter dated February 14, 2024 [ECF No. 287] in which Platte River provides its perspective about the status of discovery and certain discovery disputes. We have not attached documentation and correspondence exchanged between the parties, but rather, in accord with Local Civil Rule 37.1(b)(2), have only appended those discovery materials necessary, in our estimation, to consider the merits of each dispute. To the extent that the Court wishes to see any supporting documentation or correspondence between counsel, we will provide it.

    **A.  The Parties' Resolved Disputes and Agreements.**

      It appears that there are several points upon which the parties agree, but that Platte River raises in its letter to the Court as if the issues remain in dispute. Despite Platte River's invective and self-serving characterizations about what the evidence will show, which we will not address other than to say we disagree and will address Platte River's stance at the appropriate place and time, MCS submits there should be no dispute that requires resolution regarding the following two issues:

A Pennsylvania Limited Liability Partnership

California   Colorado   Delaware   District of Columbia   Florida   Georgia   Illinois   Massachusetts   Minnesota   Missouri
Nevada   New Jersey   New York   North Carolina   Oklahoma   Pennsylvania   South Carolina   Texas   Washington



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 2

### 1. MCS's Paper Discovery is Substantially Complete.

Platte River raises no legitimate issue with respect to the completeness of MCS's discovery, and for good reason. As MCS outlines in its February 16, 2024 Letter to the Court [ECF No. 288], MCS has produced a significant amount of paper discovery since November 30, 2023, and MCS has agreed to compromise when Platte River has sought additional information to avoid unnecessary disputes. MCS is anxious to move this case forward as directed by the Court and has proceeded appropriately and accordingly.

The only issue that Platte River appears to raise with MCS's discovery responses concerns Supplemental Interrogatory No. 16. However, we do not understand why, because on February 12, 2024, MCS agreed to supplement its response to avoid any further dispute. This agreement notwithstanding, for unknown reason, Platte River has raised the issue with the Court demanding that MCS either amend its answer to Supplemental Interrogatory No. 16 or withdraw the claim. And, as Platte River noted in its February 23, 2022 letter, attached as Exhibit D to its submission, MCS already produced the proposal that was submitted in 2021 and that MCS has within its possession, custody and control with respect to the "L.A. Art Club" project. *See* Feb. 14, 2024 Ltr. from Platte River to Court, Exh. D ("…with respect to the L.A. Art Club Project, which includes a proposal submitted by Vetro Building Envelope and Rampart Façade Systems (a division of MCS). *See* MCSNJ198959-199022.")[ECF No. 287]. We factually disagree about its import and implications, but there can be no disagreement that the Vetro proposal was produced because it was within MCS's project file for the L.A. Art Club, and we produced the entire project file in 2021. And, we have also assured Platte River both in writing and during the February 12 meet and confer, that we will go back and again look to see if there are any additional documents that we missed regarding the L.A. Art Club project in accord with our continuing obligation. We do not understand why Platte River included reference to this issue in its submission. This issue does not require the Court's attention.

### 2. Extension of the Dates in the Case Management Order.

Both parties agree upon the total number of depositions that need to be taken, and if we schedule on average three per week, then it will take approximately four months to complete them. We have asserted concerns about the length of the various depositions, some of which should be rather short, and therefore, we have reserved our right to express any concerns if the depositions are unnecessarily cumulative, harassing, or vexatious.



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 3

**B. The Parties' Disagreements as to which there is an Impasse.**

All of the parties' disagreements concern whether Platte River has timely met its discovery obligations in good faith. None of the discovery disputes concern whether MCS has met its discovery obligations. Although we take issue with the invective in Platte River's submissions to the Court, we will not specifically respond to any particular point unless the Court requests it. We also will not characterize the merits of the factual support for MCS's claims and defenses and will instead litigate the merits at the appropriate time and place. We disagree with Platte River's characterizations and cherry-picked representations.

**1.  *In Camera* Review of Platte River's Withheld Documents.**

Notably missing in Platte River's submissions to the Court is its full-throated denial. Platte River does not argue that it properly described, logged and lawfully withheld responsive, relevant documents on the basis of an applicable privilege that it itemized in its privilege log. Platte River should not be permitted to play hide the ball with the hope that it can run out the clock. *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) (explaining that "privileges should be recognized only when necessary to achieve their respective purposes")).

In addition, in light of the Court's November 30 Order that supplemental discovery is permitted, and given the Court's direction that discovery concerning MCS's Nineteenth Affirmative Defense of bad faith and fraud should proceed, there are new bases upon which to question the propriety of Platte River's assertions of the attorney client privilege. This is especially so in a case of this magnitude and under the present circumstances where there has not yet been a single deposition. Yet, in its February 16, 2024 letter, Platte River asks the Court to "overrule MCS's challenges to Platte River's privilege log and redaction logs." Platte River's Ltr. at p. 15 [ECF No. 287]. And, Platte River has conceded that it never even searched for any additional documents that would have been responsive to MCS's Third Set of Requests for Documents, and accordingly, did not withhold or log any of those responsive documents either. Instead, Platte River posits that the Court should not entertain MCS's concerns about the proprieties and completeness of Platte River's assertions of the attorney client privilege because MCS should have challenged its privilege log earlier. However, given that depositions have not even begun yet, and given that it is possible that testimony elicited in depositions often supports challenges to assertions of the attorney-client privilege, Platte River's position should not be credited. "[T]he modern instruments of discovery are thus a principal means by which trials are rendered less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Aetna Inc. v. Express Scripts, Inc.*, 261 F.R.D. 72, 78 (E.D. Pa. 2009)



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 4

(citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). In this Circuit, MCS "cannot be faulted for failing to pry further by discovery into the very same inquiry aborted by [Platte River's] misleading answer." *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1201 (3d Cir. 1989).

MCS submits that it has established a prima facie case that warrants review of the documents withheld purportedly because they are privileged. Never once has Platte River justified its withholdings or stated that all of its withholdings are appropriate and abide by the ample case law and exceptions that apply to the handling of claims such as those that Platte River was handling. For the reasons outlined in **Appendix 1** to this letter, MCS submits why it has established a prima facie case to call the entirety of Platte River's privilege log into question, warranting in camera review of the withheld, purportedly "privileged" documents.

"[E]ven if the party seeking to invoke the crime-fraud exception to the attorney-client privilege cannot make out a prima facie case sufficient to overcome the privilege, it still may be entitled to have a court make an in camera review of the documents in issue to determine if those documents and the evidence placing the documents in context establish the applicability of the crime-fraud exception to the privilege." *Chevron*, 633 F.3d at 167. "[W]here the client consults the attorney for the purpose of committing a future crime or fraud, the crime-fraud exception to the attorney-client privilege applies and communications made in furtherance of the anticipated crime or fraud are not protected from disclosure as recognition of 'the privilege is no longer defensible.'" *Id*. at 166 (citations omitted). Here, however, it is impossible to assert specific objections or to establish a prima facie basis to invoke this exception on the current record, in part because the log has not been supplemented, and Platte River has not produced any documents on that basis. In fact, Platte River concedes it has not attempted to produce any documents at all in response to MCS's Third Set of Requests for Production of Documents. *See* Platte River's Feb. 16 Letter at p. 15 (asking the Court to "overrule MCS's objections to Platte River's Responses and Objections to MCS's Third Set of Document Requests and Second Set of Interrogatories"). It is axiomatic that issues as serious as this can only be presented once ample fact discovery has occurred, including but not limited to depositions.

It is not appropriate to assert that MCS has waived any right to challenge the propriety of Platte River's January 10, 2024 privilege log. It is simply inapplicable. The Court should also compel production of unredacted versions of any other documents redacted or entirely withheld based on a claim that they contain "confidential" information, and order production pursuant to the operative Confidentiality Order. *See* **Appendix 1**. See also MCS's Feb. 16, 2024 Ltr., Exhs. 3-6. As this Court has previously held, MCS has pled facts that support its several causes of action. [ECF Nos. 177, 248, 249]. MCS, therefore, has demonstrated why granting it permission



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 5


to seek discovery regarding MCS's Nineteenth Affirmative Defense and requiring Platte River to produce all unredacted versions of the documents logged on its Redaction Logs is necessary, given the expanded scope of this case and the Court's November 30, 2023 Order.  MCS is entitled to seek discovery regarding the motive of Platte River, which is a necessary element of its claims.  Courts consistently hold that MCS must demonstrate an improper, self-interested motive as part of its Nineteenth Affirmative Defense. It would be prejudicial to bar MCS access to the discovery needed to prove its case, especially at this juncture before any depositions have even been scheduled.  The context that the redacted portions of the documents convey is an integral aspect to these important documents. Platte River should not be permitted to redact them, in violation of the bright line prohibition on doing so, when the propriety of its motives and treatment of MCS is on trial.

> **2. MCS's Third Set of Document Requests supporting its Nineteenth Affirmative Defense and Platte River's Improper Responses to MCS's Second Set of Interrogatories.**

Platte River asks the Court to overrule MCS's objections to Platte River's Responses and Objections to MCS's Third Set of Document Requests on the basis that they are duplicative of the initial responses and too broad because Platte River avers that "MCS has provided none of the particular details of this alleged fraud". *See* Platte River's Feb. 16 Letter at p. 5.  The Court already addressed Platte River's arguments on November 22, 2023, memorialized by the November 30, 2023 Order, and directed the parties that to the extent they had not done so previously, they could serve discovery demands with respect to MCS's Nineteenth Affirmative Defense.  If Platte River had any question about the Court's Order, Platte River should have sought clarification on November 22, 2023.

As of November 22, 2023, Platte River had ample notice about the contours of MCS's Nineteenth Affirmative Defense of fraud. By that date, the parties had completed briefing with respect to Platte River's motion to strike. Platte River's characterizations and invective reflect that it is does not like the specific factual allegations that MCS has asserted in support of its Nineteenth Affirmative Defense.  But, it is incorrect to say that Platte River is not on notice as to what those particular factual allegations are.  The Second Amended Complaint, filed November 9, 2022 [ECF No. 179], provides the factual supports and places Platte River on notice of the misrepresentations at issue.  In addition, in MCS's Brief in Opposition to Platte River's Motion to Strike, filed on September 13, 2023 [ECF No. 273], MCS cites specific factual allegations from the Second Amended Complaint that support the basis for the Nineteenth Affirmative Defense. Specifically, MCS asserts that Platte River's representation that it would conduct an investigation into the merits of Cumby's bond claim was false and misleading, that the investigation was a sham, and



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 6

that Platte River had no intention of abiding by any recommendation made by Forcon because it already decided it wanted to sever its relationship with MCS. *See* MCS's Opp. Br. at pp. 13-14 of 21 (citing SAC, ¶¶ 6, 8, 20, 79-87, 111-114) [ECF no. 273]. MCS also alleges that Platte River misrepresented the status of its investigation and books and records review. MCS's Opp. Br. at pp. 15-16 of 21 [ECF No. 273]. In this regard, and as MCS states with specificity in the Second Amended Complaint and its Briefing on this issue, MCS asserts that Platte River's investigation into Cohen's financial viability was a fraudulent scheme to sever its relationship with Cohen, and in furtherance of this fraudulent scheme, Platte River undertook a review of MCS's work in progress to assess its financial wherewithal and also engaged Forcon to conduct a books and records review in connection with Cohen's request for a performance bond for the Pier 55 Project. *Id.* (citing SAC ¶¶66-71, 106).

Fraud is an entirely appropriate defense to assert in response to a surety's indemnification claim, and MCS is entitled to discovery to substantiate it. "Courts have recognized that the one exception to enforcement of a principal's liability for a surety's disbursement is bad faith or fraudulent payment. . . . Thus, a claim of fraud or bad faith acts as a defense and, if properly supported, creates a genuine issue of material fact." *U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 585, 587 (M.D. Pa. 1998) (holding that to prove bad faith by making excessive payments and failing to investigate claims, the principal must submit "evidence that [surety] made these payments because of an improper motive or purpose."). Here, MCS alleges that the books and records review and the Cumby bond claim investigations were conducted pretextually. We are entitled to discovery to meet that burden. In addition, we are entitled to discovery with respect to the reason why the surety paid Cumby $3.4 million such that MCS can meet is burden to prove Platte River's improper motive or purpose. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 571 F.3d 1143, 1146 (11th Cir. 2009) (explaining that "a negligent investigation of a claim, does not by itself constitute bad faith. Rather, to give rise to an inference of bad faith, such conduct must be accompanied by other evidence of improper motive, such as a self-interested settlement."); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 254 (2001) (concluding that the lower court improperly granted summary judgment to the defendant because the plaintiffs had been denied the benefit of discovery on certain issues regarding the breach of good faith and fair dealing that could have created a genuine issue of fact); *PSE Consulting, Inc. v. Frank Mercede and Sons, Inc.*, 267 Conn. 279, 318 (2004) (concluding that a self-interested settlement, when accompanied by other evidence of improper motive, can constitute bad faith).

There also is sufficient basis to question whether Platte River has willfully violated the Court's November 30, 2023 Order by refusing to respond to MCS's demands in its Third Set of Document Requests for several reasons. First, Platte River expressly stated that it would not produce documents relevant to MCS's Nineteenth Affirmative Defense. *See* Ltr. from S. Wieder



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 7

to C. Trainor, dated Aug. 2, 2023 ("Platte River is entitled to know – in advance of supplemental document discovery and depositions – the details of the alleged fraud it is alleged to have committed"). In other words, as of August 2, 2023, Platte River stated that it would not produce supplemental documents until the motion to strike was addressed, and to date, it remains pending. Then, on September 13, 2023, MCS filed its Brief in Opposition to the Motion to Strike, identifying all of the particularized factual allegations that place Platte River on notice of the specific misrepresentations asserted in the operative pleadings, and thus, the bases for MCS's fraud defense. [ECF No. 273]. Then, at the November 22, 2023 hearing, the Court allowed MCS to serve discovery with respect to the Nineteenth Affirmative Defense. And, in recent correspondence, as Platte River acknowledges in its February 16, 2024 Letter [ECF No. 287], Platte River has refused to move forward with depositions because:

> *we explained that it made little sense to produce these witnesses while MCS was still claiming that additional documents relating to the books and records review and investigation of the Cumby bond claim conducted by Forcon (for Platte River) had to be searched for and, if located, produced, which would then require calling these witnesses back.*

*Id.* This history demonstrates that Platte River has consistently maintained that it has not produced and should not be required to produce documents that are relevant to MCS's Nineteenth Affirmative Defense for fraud, and it will not and cannot confirm that all responsive documents have been produced as it must to meet its obligations under the Court's November 30, 2023 Order.

That Platte River may have produced some relevant documents in 2021 does not discharge Platte River of its obligations to respond to discovery permitted by the November 30 Order because although perhaps overlapping in some instances, MCS's Second Set of Interrogatories and Third Set of Requests for Production of Documents are not entirely duplicative of the 2021 discovery demands. For example, the First Amended Complaint does not allege any facts at all about the books and records review. Nor are there any specific allegations about Forcon's investigation into Cumby's bond claim in MCS's First Amended Complaint. It also cannot be ignored that the First Amended Complaint was filed on June 15, 2020, before Platte River even paid Cumby pursuant to the Tender Agreement, and therefore, before Platte River could even ostensibly assert an indemnification claim against MCS. The example that Platte River raises in its February 16 Letter supports MCS's position. There, Platte River argues that MCS's Initial Request No. 20 sought "documents between Platte River and Forcon related to MCS." Platte River Ltr. at p. 4 of 100 (cleaned up). In the Third Set of Requests, however, MCS seeks "[a]ll documents and communications that relate to the scope of Platte River's engagement of Forcon to conduct a books and record review of MCS in 2019." Not only is this relevant to whether the



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 8

engagement of Forcon was bona fide or a sham, but this request is also not duplicative of the former request because the supplemental request does not limit the responsive set of documents to communications between Forcon (or the other enumerated entities/individuals) and Platte River. Instead, the Third Set of Requests No. 8 asks for all documents and communications about the scope of the engagement. Although responsive documents may be overlapping, they would not be entirely duplicative. In such cases, upon confirmation of that fact, Platte River might respond that there are no additional documents to produce. Of course – Platte River can only make that representation if, in fact, it actually searches for and reviews potentially responsive documents. Because Platte River concedes that it has not searched for or reviewed any additional documents that are responsive to MCS's Third Set of Requests for Documents, Platte River should be compelled to do so. Accordingly, Platte River should be compelled to search for responsive documents and produce them.

And, Platte River should be ordered to search for these documents without further delay. Platte River flatly states that it has not even looked for additional documents. It necessarily concedes that there are likely to be additional documents that have not been produced about the books and records review and Forcon's investigation into the merits of Cumby's default and bond claim, because otherwise, Platte River should have had no problem abiding by the Court's November 30, 2023 order and unequivocable directions by producing the Forcon witnesses for their depositions as MCS requested.

It is for all of these reasons, including that the Court stated that it would not compel Platte River to respond to MCS's Second Set of Requests for the Production of Documents, that Platte River cannot rely on Federal Rule of Civil Procedure 33(d) when responding to MCS's Second Set of Interrogatories. There is no indication that Platte River's document production is complete. Therefore, Platte River should be compelled to actually respond to the questions presented without simply referring MCS to the entire database of documents that Platte River produced in 2021 and suggesting that MCS use certain search parameters to do so. Nor can the majority of MCS's Second Set of Interrogatories be answered completely and in good faith by simply pointing to a swath of Platte River's business records and telling MCS to judge for itself whether the documents are responsive to the request. Again, if Platte River had any issue or question about the contours of the Court's November 30, 2023 Order, it should have sought clarification at the time. It did not, and instead of answering the call of the interrogatories, it side-steps the questions. Platte River should be compelled to respond to the Second Set of Interrogatories in short order, without resort to Rule 33(d).

Finally, Platte River argues that the Third Set of Requests are not relevant to the Nineteenth Affirmative Defense. As set forth in **Appendix 2** to this letter, we endeavored to limit the



The Honorable Rukhsanah L. Singh, U.S.M.J.
February 23, 2024
Page 9

document requests to information that was "supplemental" and that was germane to the elements of the bad faith and fraud defense, which we understood we were allowed to pursue based on the Court's November 22, 2023 instructions and November 30, 2023 Order. We also endeavored to limit the subject matter of the Second Set of Interrogatories to matters that MCS pled for the first time in the SAC and its Nineteenth Affirmative Defense. The chart outlining these bases is enclosed at Appendix 2.

### 3. Deposition Related Issues.

Platte River incorrectly contends that MCS is "playing games and delay[ing]" discovery because we "struggled" and did not respond to Platte River's request during our February 12, 2024 meet and confer conference when counsel asked us "to explain why [MCS] wanted to depose" certain individuals. Platte River has submitted this issue to the Court, notwithstanding the fact that Platte River admits that it "had not objected" to moving forward with MCS's requested depositions of Dan McGinnis (CapSpecialty's former Chief Underwriting Officer), Jack Sennott (the former CEO of CapSpecialty), and Adam Sills (the current CEO of CapSpecialty), all of whom appear on documents that Platte River has produced in this action. Platte River Ltr. at p. 13. Platte River also correctly noted that to the extent MCS determines, during the course of the other depositions, that the depositions of Mssrs. McGinnis, Sennot, or Sills can be obviated by responses from other witnesses or the deposition of Platte River's corporate representative, we may opt to proceed in that fashion instead. *See id.* at p. 14.

For these reasons, we cannot discern what "dispute" Platte River asks the Court to resolve. We did not "struggle" to respond to Platte River's questions. However, we certainly declined to answer given that Platte River did not object to MCS taking the depositions. MCS refused to respond to Platte River's query for good reason. There is no obligation to provide the anticipated subject matter of an individual's fact deposition in advance. *Compare* Fed. R. Civ. P. 30(b)(1) *with* 30(b)(6). MCS and the undersigned will not waive the work product privilege. *See United States v. Prevezon Holdings, Ltd.*, 320 F.R.D. 112, 115 (S.D.N.Y. 2017) ("A party is not required to enumerate [its] deposition topics and pre-notice [the deponent] of the subjects about which he will inquire." (internal quotations and citations omitted)); *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 476 (S.D. Ohio 2014) ("The only time that, by Rule, a party must specify the subjects about which it wishes to depose a witness is when noticing a Rule 30(b)(6) deposition. Other deposition notices need not contain that information."); *Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada AFL-CIO v. Benjamin*, 144 F.R.D. 87, 90 (N.D. Ind. 1992); *Ruth v. City of Creedmoor*, No. 5:13-CV-00862-BR, 2015 WL 1815475, at *5 (E.D.N.C. Apr. 21, 2015) ("…in a deposition taken pursuant to Rule 30, the party conducting the deposition need not provide the deponent with a list of questions or topics for examination prior to the deposition.").


To the extent that Platte River contends this exchange demonstrates some "delay tactic" that MCS (or the undersigned) is employing, we disagree. We asked Platte River to move forward with the depositions for which there appeared to be no objection or conflicts (e.g, the Forcon employees – Carl Schnabel and Doug Leach – and two of the MCS employees – David Luckner and John Nerone). In particular, these depositions were among those that each side said that they wanted to take first. Further, it logically follows that party depositions should be easier to schedule because there are fewer schedules to coordinate. Moreover, counsel agreed in late January to set dates aside for this express purpose. Unfortunately, Platte River concedes in its February 16, 2024 Letter that it was unwilling to move forward with depositions that MCS pressed it to confirm. The only reason that these depositions did not go forward is because, as Platte River concedes, Platte River believed that "it made little sense to produce these witnesses" while any paper discovery dispute remained unresolved. We respectfully seek an order that requires Platte River to produce its witnesses, and to the extent a supplemental deposition of any particular witness is necessary due to documents produced for the first time after that deposition has been conducted, then upon a showing of good cause and court order or upon agreement of the parties, then the witness should be produced again.

\*       \*       \*

For these reasons, we respectfully ask for the Court's assistance to move this matter forward as expeditiously and efficiently as possible, to compel Platte River to remedy the discovery deficiencies that MCS enumerates in its February 16 and instant submissions, to conduct an in camera review of the documents identified on Platte River's privilege log, and further, for an extension of the case management schedule to accommodate the referenced deposition schedule.

We thank the Court for its continued consideration of this matter.

Respectfully submitted,

/s/ *Corinne McCann Trainor*

Corinne McCann Trainor

CC: All Counsel of Record