UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M. COHEN AND SONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PLATTE RIVER INSURANCE COMPANY,<br><br>Defendant,<br><br>v.<br><br>ALLEN COHEN, et al.,<br><br>Counterclaim Defendants. | Civil Action No. 20-2149 (ZNQ) (RLS)<br><br>**REPORT AND RECOMMENDATION** |

**SINGH, United States Magistrate Judge.**

Presently before the Court is a Motion by Defendant/Counterclaim Plaintiff Platte River Insurance Company ("Platte River") to strike the portion of the Nineteenth Affirmative Defense asserting fraud. (Doc. No. 268). Plaintiff/Counterclaim Defendant M. Cohen & Sons, Inc. ("MCS") and Counterclaim Defendants Allen Cohen, Susan Cohen, Eileen Cohen, Ronald Cohen, Barbara Cohen, Samuel Cohen, Janet Cohen, H.R. Reed Road, L.P., Penmawr, L.P., H.R. Sarasota LLC, and Penmawr FLA, LLC (collectively, the "MCS Defendants") oppose the Motion, (Doc. No. 273), to which Platte River has replied, (Doc. No. 274). Having considered the parties' written submissions and deciding the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), for the reasons set forth below, and for good cause shown, the Court respectfully recommends that Platte River's Motion to Strike be **GRANTED**.

1

I.  **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

As the parties and the Court are familiar with this matter, the Court sets forth only the background and procedural history relevant to the instant Motion.

A.  **THE CONSTRUCTION PROJECT**

MCS initiated this action against Platte River after a construction project went awry. Beginning in October 24, 2013, Platte River served as MCS's surety and agreed to provide bonds for projects on which MCS works pursuant to a General Indemnity Agreement. (Doc. Nos. 179, 183[1] at ¶ 19; *see also* Doc. No. 183, Ex. A). Pursuant to that General Indemnity Agreement, MCS agreed to indemnify Platte River for losses that Platte River incurred on any bonds issued under the Agreement. (Doc. No. 183 at ¶ 20 and Ex. A).

W.S. Cumby, Inc. ("Cumby") was the general contractor on the project at the Institute for Advanced Study, a post-doctoral research institution in Princeton, New Jersey (the "IAS Project" or the "Project"). (*See* Doc. No. 183 at ¶¶ 1-2). For the Project, Cumby retained MCS as a subcontractor to provide materials and services for certain glass designs and systems pursuant to a contract dated July 23, 2018 (the "Construction Contract"). (*See* Doc. No. 183 at ¶¶ 2, 26).

In accordance with the terms of the General Indemnity Agreement, on July 23, 2018, Platte River executed a Performance Bond in the amount of $3,508,849, on behalf of MCS and in favor of Cumby, for the IAS Project (the "Performance Bond"). (Doc. No. 183 at ¶¶ 22, 26 and Ex. B). The Performance Bond provides, in relevant part, that "[i]f the Contractor performs the

---

[1] MCS filed the Second Amended Complaint under seal at Docket Entry Number 179 and a public version of the Second Amended Complaint at Docket Entry Number 183. The Court references those publicly available allegations herein and thus citations to the Second Amended Complaint are to the publicly filed Second Amended Complaint.

Construction Contract, the Surety and the Contractor shall have no obligation under this bond, except when applicable to participate in a conference as provided in Section 3." (Doc. No. 183, Ex. B at p. 57). Pursuant to Section 3, Platte River's obligations as surety arise if: (1) Cumby provides notice of MCS's default to both Platte River and MCS and, unless otherwise agreed, the parties hold a conference to discuss MCS's performance ("Section 3.1"); (2) Cumby declares MCS in default, terminates the Construction Contract, and notifies Platte River of same ("Section 3.2"); and (3) Cumby agrees to pay the balance owed under the Construction Contract to Platte River or a substitute contractor retained to perform the Construction Contract ("Section 3.3"). (Doc. No. 183, Ex. B at p. 57).

According to MCS, after performance began on the IAS Project, MCS raised concerns that the architecture's glass designs were defective and ultimately not feasible. (Doc. No. 183 at ¶¶ 36-44). However, neither Cumby nor IAS approved any alternative designs. (Doc. No. 183 at ¶¶ 39-42). Cumby also rejected MCS's request for a change order to remove the warranty of the glass design. (Doc. No. 183 at ¶ 44). MCS alleges that Cumby breached the parties' agreement by, among other things, failing to provide a design free of defects or approve change orders, resulting in a default under the Performance Bond. (*See* Doc. No. 183 at ¶¶ 48-52). According to MCS, because Cumby defaulted, Platte River was not required "to act under the Performance Bond." (Doc. No. 183 at ¶ 53). In the absence of such default, Platte River's obligations would trigger only after Cumby met Sections 3.1, 3.2, and 3.3 of the Performance Bond. (Doc. No. 183 at ¶ 54).

According to MCS, in or around June 2019, Cumby notified Platte River that Cumby was considering submitting a claim under the Performance Bond. (Doc. No. 183 at ¶ 66). MCS alleges that, around that time, Platte River reviewed "all of MCS's work in progress for which Platte River had issued a bond to assess MCS's financial wherewithal to complete the bonded work." (Doc.

No. 183 at ¶ 67). In July 2019, Platte River reviewed MCS's books and records, through the use of a consultant, Forcon International ("Forcon"), in connection with MCS's request for a performance bond on another project. (Doc. No. 183 at ¶ 68). MCS alleges that, upon completing the review, Forcon determined that MCS had the financial wherewithal to complete its projects. (Doc. No. 183 at ¶ 70). Nevertheless, per MCS, Platte River had already determined that it would not issue any new bonds for MCS. (Doc. No. 183 at ¶ 71). MCS specifically alleges that it "was falsely assured that the matter remained under review, but that was not the case." (Doc. No. 183 at ¶ 71). Rather, MCS alleges that Platte River used the subsequent claim by Cumby on the IAS Project to deprive MCS of the benefit of its agreements with Platte River "in bad faith and by fraudulent means." (Doc. No. 183 at p. 17).[2]

Indeed, on "October 21, 2019, Cumby issued a notice of default to MCS." (Doc. No. 183 at ¶ 72). On November 4, 2019, MCS, Platte River, IAS, and Cumby conducted a meeting pursuant to Section 3.1 of the Performance Bond to discuss MCS's performance. (Doc. No. 183 at ¶¶ 74-76). MCS alleges, however, that while Cumby and IAS represented that MCS would have access to provide backup to change orders, Cumby denied such access and almost all change orders. (Doc. No. 183 at ¶¶ 75-77). On "November 25, 2019, Cumby formally asserted a claim under the Performance Bond." (Doc. No. 183 at ¶ 78).

On that same date, Platte River re-engaged Forcon to investigate the claim. (Doc. No. 183 at ¶ 79). MCS alleges that the investigation "was nothing but a sham" because Platte River had already decided to terminate the relationship with MCS, although MCS still believed the investigation was "bona fide." (Doc. No. 183 at ¶¶ 79-80). MCS further asserts that "Forcon

---

[2] All citations to page numbers herein refer to those automatically generated by the electronic filing system (PACER).

never made any formal recommendation to Platte River as to whether Cumby was in default" and "falsely assured MCS that Forcon agreed with MCS's approach to the design process." (Doc. No. 183 at ¶¶ 82-83). MCS claims that Platte River used Forcon's "sham" investigation to perform under the Performance Bond and "conspire[] with Cumby to replace MCS on the Project." (Doc. No. 183 at ¶ 85).

Ultimately, on or around July 9, 2020, Platte River and Cumby entered into a Tender Agreement, whereby Platte River agreed to pay Cumby $3,400,000.45. (Doc. No. 183 at ¶¶ 170-72). Pursuant to the Tender Agreement, MCS alleges that Platte River obtained an assignment of Cumby's claims against MCS and other benefits at the expense of MCS. (Doc. No. 183 at ¶ 176). MCS thus alleges that Platte River entered into the Tender Agreement "in bad faith and for fraudulent purposes because Platte River now stands in Cumby's shoes against its own indemnitor." (Doc. No. 183 at ¶ 180).

### B.  PROCEDURAL HISTORY

On February 27, 2020, MCS filed this action against Platte River alleging claims for: (1) breach of the performance bond; (2) breach of the implied covenant of good faith and fair dealing; (3) a declaratory judgment; and (4) tortious interference with contractual relations. (*See generally* Doc. No. 1). On June 15, 2020, MCS filed its First Amended Complaint ("FAC"), naming Cumby as a Defendant and adding a fifth count alleging a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*[3] (*See generally* Doc. No. 24).

---

[3] Cumby moved to dismiss the claims asserted against it, (Doc. No. 34), which the Court ultimately granted, (Doc. Nos. 81, 82).

On July 6, 2020, Platte River filed its Answer and Counterclaims against the MCS Defendants, asserting claims for specific performance of the General Indemnity Agreement, breach of the General Indemnity Agreement, common law indemnity, and recovery of attorneys' fees pursuant to the General Indemnity Agreement (the "Counterclaims"). (Doc. No. 37). On August 10, 2020, the MCS Defendants filed their Answer to the Counterclaims, asserting eighteen Affirmative Defenses, none of which involved fraud. (Doc. No. 53).

Following substantial discovery and a contested motion for leave to amend, with the Court's leave, MCS filed a Second Amended Complaint ("SAC") on November 9, 2022. (Doc. No. 179; *see also* Doc. No. 183 (public SAC)). Platte River filed its Answer and Counterclaims in response to the SAC on June 23, 2023. (Doc. No. 255). Platte River did not amend its Counterclaims in response to the SAC. (*See* Doc. No. 255). On July 21, 2023, the MCS Defendants filed their Answer, Affirmative Defenses, and Jury Demand in response to the Counterclaims. (Doc. No. 262). Without having sought prior leave to do so, the MCS Defenses added a new affirmative defense not previously asserted through their Nineteenth Affirmative Defense, which asserts that "Platte River's Counterclaims are barred by its bad faith and fraud." (Doc. No. 262 at p. 19).

    C.    **THE MOTION TO STRIKE**

Platte River now moves to strike the fraud affirmative defense pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (Doc. No. 268). Platte River argues that the MCS Defendants failed to allege sufficient facts with particularity in support of the affirmative defense of fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure. (*See* Doc. No. 268-1 at pp. 10-12). Platte River further contends that leave to replead should not be granted, as the MCS

Defendants can proffer no good cause for further amendment at this stage of the litigation. (*See* Doc. No. 268-1 at pp. 9-10, 13; *see also* Doc. No. 268-2).

The MCS Defendants oppose the Motion and seek, in the alternative, leave to amend their Answer and Affirmative Defenses. (Doc. No. 273). The MCS Defendants contend that the fraud affirmative defense should be read together with the allegations set forth in MCS's SAC, which is incorporated by reference into the Answer and Affirmative Defenses, and, as so incorporated, the SAC pleads sufficient particularity as to the bases for the fraud affirmative defense. (*See* Doc. No. 273 at p. 12). While the MCS Defendants acknowledge that Rule 9(b) is applicable to an affirmative defense of fraud, they contend the Court should construe the particularity requirement with flexibility. (*See* Doc. No. 273 at p. 11). With such flexibility in mind, the MCS Defendants point to allegations in the SAC that assert that Platte River "fraudulently" investigated MCS's dispute with Cumby and "misrepresented" the status of its books and records review. (Doc. No. 273 at pp. 15-16). Accordingly, the MCS Defendants argue that Platte River has sufficient "fair notice" of the bases of the fraud affirmative defense. (Doc. No. 273 at p. 17). The MCS Defendants further add that Platte River has not shown any undue prejudice caused by the affirmative defense and, therefore, striking the affirmative defense is inappropriate. (Doc. No. 273 at pp. 17-18). Finally, the MCS Defendants alternatively seek leave to amend their Answer and Affirmative Defenses if the Court grants the instant Motion.[4] (Doc. No. 273 at p. 19).

In reply, Platte River argues that the SAC's allegations are inadequate to withstand the Motion because such allegations relate to a breach of contract claim and not a specific fraud that could be placed at issue. (*See* Doc. No. 274). Platte River also contends that the fraud affirmative

---

[4] The MCS Defendants do not provide any proposed amendments for the Court's consideration other than their references to the SAC's allegations.

defense, without any particularized factual basis, unduly prejudices it in light of the reputational harm that it poses.  (Doc. No. 274 at p. 14-15).  Platte River continues to oppose any request for further amendments of the Affirmative Defenses because such amendment would be futile to meet Rule 9(b)'s heightened pleading requirement.  (Doc. No. 274 at p. 15).

## II.     LEGAL STANDARD

Platte River seeks to strike the MCS Defendants' fraud affirmative defense pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  Pursuant to Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court "should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent."  *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).  Insufficiency arises if a party asserts an unrecognized defense to a cause of action.  *Federal Trade Comm'n v. Hope Now Modifications, LLC*, Civ. No. 09-1204, 2011 WL 883202, at *2 (D.N.J. Mar. 10, 2011) (citations omitted); *see also Signature Bank v. Check-X-Change, LLC*, Civ. No. 12-2802, 2013 WL 3286154, at *2 (D.N.J. June 27, 2013) (recognizing that the court may strike an affirmative defense "if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts" (citation omitted)).  "An affirmative defense is legally insufficient where it cannot succeed under any set of facts which may be inferred from the allegations of the pleading."  *In re Merck & Co., Inc. Vytorin ERISA Litig.*, Civ. No. 08-1974, 2010 WL 2557564, at *2 (D.N.J. June 23, 2010) (citing *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991)); *see also United States v. Am. Health Foundation, Inc.*, Civ. No. 22-2344, 2023 WL 7329506, at *2 (E.D. Pa. Nov. 7, 2023) ("'Affirmative defenses are not to be struck unless there is no set of facts which could be inferred from the pleadings in support of the

8

defenses.'" (quoting *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 145 (E.D. Pa. 2011)) (internal editing marks omitted)).

Ultimately, a court looks, thus, to whether the affirmative defense gives the plaintiff "fair notice of the nature of the defense." *In re Vytorin ERISA Litig.*, 2010 WL 2557564, at *2; *see also Tyco Fire Products LP v. Victaulic Co*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) ("An affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved." (footnote omitted)). Pursuant to Federal Rule of Civil Procedure 8, a party raising an affirmative defense, including fraud, must affirmatively state that defense. Fed. R. Civ. P. 8(c)(1). "Providing knowledge that the issue exists, not precisely how the issue is implicated under the facts of a given case, is the purpose of requiring averments of affirmative defenses." *Tyco Fire Prods.*, 777 F. Supp. 2d at 901.

Accordingly, courts have held that the pleading standards applicable on a review of a motion brought pursuant to Rule 12(b)(6) do not apply to affirmative defenses asserted pursuant to Rule 8(c). *See Hope Now*, 2011 WL 883202, at *3. Nevertheless, courts also have found that affirmative defenses asserting fraud were subject to Rule 9(b)'s specificity requirements.[5] *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Borough of Edgewater v. Waterside Constr., LLC*, Civ. No. 14-5060, 2016 WL 7256873, at *8 (D.N.J. Dec. 14, 2016) (noting that courts have held that affirmative defenses are subject to Rule 9(b)); *Tyco Fire Prods.*, 777 F. Supp. 2d at 905 n.7 ("Such

---

[5] The MCS Defendants concede in their opposition that Rule 9(b) applies to the affirmative defense. (*See* Doc. No. 273 at p. 11 ("If the affirmative defense is grounded in fraud, the circumstances constituting the misrepresentation must be stated with particularity pursuant to Rule 9(b).")).

pleadings are subject to Rule 9(b)'s particularized requirements regardless of whether they are made by way of an affirmative defense or a claim."); *see also Barry v. Stryker Corp.*, Civ. No. 20-1787, 2023 WL 2733652, at *8 (D. Del. Mar. 20, 2023) (holding that affirmative defense of fraud "must be pled with particularity" under Rule 9(b)); *cf. 2109971 Ontario Inc. v. Best Deals Discount Furniture LLC*, Civ. No. 22-3557, 2023 WL 3072756, at *3 (D.N.J. Apr. 25, 2023) (applying Federal Circuit law to find that an affirmative defense of inequitable conduct in response to a claim of patent infringement must be pled with specificity pursuant to Rule 9(b)); *Gesualdi v. LR Safety Consultants & Constr. Servs., LLC,* Civ. No. 19-2404, 2020 WL 6809127, at *4 (E.D.N.Y. Nov. 3, 2020) (holding that affirmative defense of fraud was subject to dismissal under Rule 9(b) rather than Rule 12(f)).[6]

Importantly, motions to strike are generally disfavored. *Hope Now*, 2011 WL 883202, at *1. As a result, there typically must be a showing of prejudice to the movant for a court to strike material from a pleading. *See Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. Mar. 27, 2014) (quoting *Hope Now*, 2011 WL 883202, at *1). Ultimately, the Court exercises discretion in considering a Rule 12(f) motion to strike. *Id.*

### III.   DISCUSSION

In the Nineteenth Affirmative Defense, the MCS Defendants allege simply that "Platte River's Counterclaims are barred by its bad faith and fraud." (Doc. No. 262 at p. 19). While the MCS Defendants acknowledge that Rule 9(b) arises in the context of an affirmative defense

---

[6] *But see Diaz v. Capital Mgmt. Servs., LP*, Civ. No. 17-134, 2018 WL 5278705, at *3 (D.N.J. Oct 23, 2018) (declining to apply Rule 9(b) to an affirmative defense on a motion to strike where the Third Circuit had yet to determine if the affirmative defense was required to meet the heighted pleading standard).

asserting fraud, they contend that the Court should not stringently apply Rule 9(b), but, rather, construe the heightened pleading standard in the context of Rule 8's fair notice provision. They also argue that the Court should construe the Affirmative Defense in the context of the allegations of the SAC.

The MCS Defendants generally assert that the Court should accept that MCS's SAC is incorporated by reference into its Affirmative Defenses. According to the MCS Defendants, the SAC alleges that Platte River "misrepresented and fabricated reasons to sever its relationship with Cohen" in various ways. (*See* Doc. No. 273 at p. 12). The MCS Defendants further assert that, because the SAC uses words such as "sham," "fraudulent," or "not 'bona fide,'" such language is sufficient to put Platte River on notice of the factual particularity supporting its affirmative defense of fraud. (*See* Doc. No. 273 at p. 12).

To be clear, MCS does not assert a claim of fraud in the SAC. (*See* Doc. No. 183). Yet, according to the MCS Defendants, the SAC sufficiently pleads that Platte River engaged in a "sham" investigation and "misrepresented" that it would review MCS's work to assess MCS's financial "wherewithal to complete the bonded work." (*See* Doc. No. 273 at pp. 13-15; Doc. No. 183 at ¶ 66). However, according to MCS, Platte River already had determined to terminate its relationship with MCS. (*See* Doc. No. 273 at p. 15; Doc. No. 183 at ¶ 71).

To meet Rule 9(b), the MCS Defendants must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). Rule 9(b) further "requires, at a minimum, that the [claimant] identify the speaker of allegedly fraudulent statements." *Klein v. General Nutrition Companies, Inc.*, 186 F.3d 338, 345 (3d Cir. 1999). Here, even as to the allegations in the SAC regarding a "sham" or

11

"bad faith and fraudulent means," such allegations are conclusory, and there is no clarity as to whether such allegations would relate to some or all the MCS Defendants. The use of such words, while similar in meaning to "fraud," do not rise to the level of meeting the particularized pleading standard of Rule 9(b).[7]

The SAC asserts broad allegations that Platte River made misrepresentations and had predetermined to terminate the relationship with MCS. Yet, the SAC does not identify who made any such representations, to whom they were made, or who within Platte River may have acted on its behalf in connection with the purported "fraud." Even if the Court were to supplant fraud for the words "sham," "bad faith," and "fraudulent" as used in the SAC, neither Platte River nor the Court are on adequate notice of a purported fraud beyond the alleged breaches of contract asserted in the SAC.

Ultimately, the SAC allegations, assuming incorporation into the Affirmative Defenses, lack any "precision or some measure of substantiation" to support a fraud allegation as required by Rule 9(b), even liberally construed. As such, the allegations of the SAC do not adequately put Platte River on notice as to what was the alleged fraud vis-à-vis all the MCS Defendants, or even as to the "'who, what, when, where and how of the events at issue.'" *Dimartino v. BMW of N. Am., LLC*, Civ. No. 15-8447, 2016 WL 4260788, at *6 (D.N.J. Aug. 11, 2016) (quoting *in re*

---

[7] The parties acknowledge that Pennsylvania state law applies to the claims and defenses at issue here. Pennsylvania common law fraud arises where there is: (1) a misrepresentation or concealment; (2) that is material to the transaction at hand; (3) that is made with knowledge or the falsity or with recklessness as to the veracity or calculated to deceive; (4) with the intent to mislead another rely thereon; and (5) the other party justifiably relied on the misrepresentation that (6) proximately caused injury. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 & n.12 (Pa. S. Ct. 1994)). Claims of fraud can relate to contracts where there is alleged fraudulent inducement or fraud in the execution. *Id.* at 206. The MCS Defendants have not pointed to allegations of the SAC that would meet all of these elements, such as materiality or reasonable reliance.

*Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270, 276-77 (3d Cir. 2006)). The SAC's allegations, assuming they are properly incorporated into the Affirmative Defenses, are therefore insufficient to meet Rule 9(b)'s specificity requirement. *See Cipollone*, 789 F.2d at 188 (recognizing the court may grant a motion to strike if the defense is clearly insufficient).

In addition, the insertion of a new fraud affirmative defense—without sufficient factual bases, leave of Court, or consent of the adverse party—about three years after the filing of the original Counterclaims and while factual discovery had been substantially completed is no doubt unduly prejudicial to Platte River. Indeed, the injection of an affirmative defense of fraud into a breach of contract case so late in the progress of discovery would undoubtedly cause undue delay and expand discovery beyond the issues already joined in this matter. Accordingly, the undersigned recommends that Platte River's Motion to Strike the MCS Defendants' Nineteenth Affirmative Defense be granted.

Considering the MCS Defendants' alternative request for leave to amend its Answer and Affirmative Defenses to the Counterclaims, the undersigned recommends that the request be denied. First, the MCS Defendants offer no proposed redlined language for the Court to evaluate. Nevertheless, the Court assumes such amendments would incorporate the allegations of the SAC. Yet, those allegations are insufficient to meet Rule 9(b) for the reasons discussed above.[8] Second,

---

[8] Platte River argues that, through the fraud affirmative defense, the MCS Defendants "attempt to dress up contract claims as a fraud." (Doc. No. 274 at p. 13). Notably, Pennsylvania law distinguishes claims arising under contract and those arising under tort. *See, e.g.*, *Battle Born Munitions Inc. v. Dick Sporting Goods Inc.*, Civ. No. 22-1005, 2023 WL 4758449, at *3 (3d Cir. 2023) (applying Pennsylvania law in reviewing dismissal of claims of fraudulent inducement and negligent misrepresentation arising out of a contractual dispute). To so distinguish, Pennsylvania law bars tort claims, such as fraud, in certain instances, including where the tort claim "duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 67 (Pa. S. Ct. 2014) (internal quotation marks and citation omitted); *see also Battle Born*, 2023 WL 4758449, at *4 (applying *Bruno*). As a result, "claims of

the MCS Defendants' insertion of the new Affirmative Defense to Counterclaims, of which they had notice for about three years, on the guise that the Court had granted limited leave to amend the underlying complaint underscores the prejudice to Platte River. *See Abrams v. eResearch Tech., Inc.*, --- F. Supp. 3d ---, at *4 (E.D. Pa. 2023) (Generally, "an unauthorized amendment will not be considered unless the amendment is re-submitted for the court's approval.").

Nevertheless, the Court considers whether leave would have been granted had it been sought originally. *Id.* In doing so, "[i]t is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment." *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369 (3d Cir. 2020) (internal quotation marks and footnote omitted). Here, neither MCS's pleadings nor the MCS Defendants' original Affirmative Defenses to the Counterclaims asserted claims of fraud. The MCS Defendants offer no explanation for the delay in asserting a new fraud affirmative defense (nor has MCS sought to amend its complaint to assert a claim of fraud). There has been no showing that the MCS Defendants exercised any due diligence in inserting this new defense at this late stage. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *Young v. United States*, 152 F. Supp. 3d 337, 353 (D.N.J. 2015) (citation and internal quotation marks omitted). With the Counterclaims having been asserted about three years before the MCS Defendants interjected the new fraud affirmative defense into the litigation, without meeting the heightened pleading requirements for an affirmative defense of fraud, Platte River is unduly prejudiced. Therefore, the undersigned recommends that the Court deny the MCS

---

fraud in the performance of a contract are barred by the doctrine." *Battle Born*, 2023 WL 4758449, at *4 (citation omitted). Here, amending the Answer and Affirmative Defenses to include the allegations of the SAC relied upon by the MCS Defendants appears to only lead to the conclusion that such allegations of fraud may be barred under Pennsylvania law. *See in re Vytorin ERISA Litig.*, 2010 WL 2557564, at *2 ("An affirmative defense is legally insufficient where it cannot succeed under any set of facts which may be inferred from the allegations of the pleading.").

Defendants' request, in the alternative, for leave to amend. *See, e.g.*, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

## IV.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that the Court grant Platte River's Motion to Strike the fraud affirmative defense asserted in the MCS Defendants' Nineteenth Affirmative Defense. The parties have fourteen days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); L. Civ. R. 72.1(a), 72.1(c)(2). Now, for good cause shown,

**IT IS** on this **22d** day of **March 2024** hereby

**RECOMMENDED** that Platte River's Motion to Strike, (Doc. No. 268), be **GRANTED**; and it is further

**RECOMMENDED** that the MCS Defendants' request in the alternative for leave to further amend their Answer and Affirmative Defenses be **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall TERMINATE the Motion pending at Docket Entry Number 268; and it is further

**ORDERED** that the Clerk of Court is hereby directed to activate this Report and Recommendation for the District Court's review.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**